J-S10028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW SMITH | : | |
| | : | |
| Appellant | : | No. 3283 EDA 2016 |

Appeal from the PCRA Order October 5, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008249-2007,
CP-51-CR-1300825-2006

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 14, 2018**

Appellant, Andrew Smith, appeals from the order entered on October 5, 2016, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.   After careful review, we vacate the PCRA court's order in part and remand for an evidentiary hearing.

The PCRA court ably summarized the underlying facts of this case:

> [Following Appellant's arrest in 2006, the Commonwealth charged him with] two counts of rape of a child under [the age of 13], two counts of unlawful contact with a minor[], two counts of corruption of a minor[], and one count of aggravated assault[.[1]  The charges arose out of Appellant's sexual attacks upon two 12-year-old girls:  J.D.R. and G.O.]

---

[1] 18 Pa.C.S.A.  §§ 3121(c),  6318(a)(1),  6301(a)(1),  and  3125(a)(1), respectively.

The first victim, J.D.R.[,] lived with her mother in Florida during the school year and with her father in Philadelphia during the summer months. During the summer of 2004, J.D.R. first met [Appellant] when their karate classes conducted a demonstration at a fundraiser benefit. Their relationship progressed over the next year, and by the summer of 2005, [12-year-old] J.D.R. began considering [Appellant] her boyfriend. At approximately 1:00 a.m. one summer evening in 2005, J.D.R. spoke on the phone with [the 18-year-old] Appellant. During this conversation, J.D.R. told [Appellant] she was visiting her grandmother's house in Southwest Philadelphia and spending the night there. [Appellant] asked J.D.R. if he could come over. At first, J.D.R. said "no," but after [Appellant] persisted, she agreed.

When he first arrived, [Appellant] and J.D.R. talked and kissed. Later, [Appellant] tried to unbutton J.D.R.'s pants, but she initially said "no." [Appellant] told J.D.R., "I want to do this because I love you, and I want to show you how I love you." J.D.R. continued to say "no" and [Appellant] backed off. However, later on, [Appellant] attempted to unbutton J.D.R.'s pants again. When J.D.R. objected, [Appellant] became angry and began to leave.

When [Appellant] got up to leave, J.D.R. said "okay, I'll do it. Okay." [Appellant] then penetrated J.D.R.'s vagina with his fingers and then his penis. During penetration, J.D.R. asked [Appellant] to stop because she was in severe pain, but he refused. J.D.R. did not reveal that she had sex with [Appellant] until approximately one-and-a-half years later.

Complainant G.O. first met [Appellant] at karate class when she was six years old and considered him a family friend for years. On the morning of September 27, 2005, [the 12-year-old] G.O. was at home sleeping when she heard a knock on the door. G.O. got up, opened the door, and saw [Appellant]. [Appellant] told G.O. that he came to say goodbye because he was leaving Philadelphia. [Appellant] then asked G.O. if he could use the bathroom and G.O. said yes. [Appellant] proceeded upstairs to the second floor bathroom.

- 2 -

After a few minutes, G.O. thought [Appellant] was taking too long to return so she called up to him. [Appellant] did not answer so G.O. went upstairs to find him. G.O. found [Appellant] in her bedroom. When questioned, [Appellant] said he was just looking at her bedroom. [Appellant] then told G.O. to give him a hug, but G.O. refused and said "let's go downstairs." Instead, [Appellant] grabbed G.O., hugged her, and said he wanted G.O. to remember him. Still holding G.O. in an embrace, [Appellant] positioned G.O. between his legs and lowered her onto the bed. [Appellant] put G.O. on her back while he kept his forearms around her. [Appellant] told G.O. that he would miss her and wanted to give her "stuff" to remember him[]. [Appellant] kissed G.O.'s neck and pulled her pajama pants down. G.O. told [Appellant] to stop, but he ignored her. [Appellant] penetrated G.O.'s vagina with his penis as she lay crying. During the penetration, G.O.'s cell phone rang downstairs. [Appellant] "popped up" from the bed. G.O. then pushed [Appellant] off of her, went downstairs, and answered her cell phone. While she was on the phone, [Appellant] left the house.

G.O. did not immediately report the rape because she was scared and did not trust anyone. Approximately one year later, G.O. told her mother what had happened because she heard [Appellant] was returning to Philadelphia. G.O.'s mother took her to the hospital and filed a police report.

PCRA Court Opinion, 6/30/17, at 1 and 3-5 (internal footnotes and some internal capitalization omitted).

The jury found Appellant guilty of every charged crime and, on January 28, 2011, the trial court sentenced Appellant to serve an aggregate term of seven to 14 years in prison for his convictions. N.T. Sentencing, 1/28/11, at 48-50. We affirmed Appellant's judgment of sentence on June 19, 2012; the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on December 27, 2012. *Commonwealth v. Smith*, 47 A.3d 862 (Pa. Super. 2012), *appeal denied*, 60 A.3d 536 (Pa. 2012).

- 3 -

On September 3, 2013, Appellant filed a timely, *pro se* PCRA petition. Within the petition, Appellant claimed that his trial counsel was ineffective for "failing to object to testimony by [a prosecutor who asserted that she] had found [] G.O. to be credible as a [complaining] witness in [a prior sexual abuse] case." Appellant's *Pro Se* PCRA Petition, 9/3/13, at 2. Separately, the petition alleged that trial counsel was ineffective for "question[ing] the investigating officer in a fashion that elicited testimony that the investigating officer found [complainant G.O.] to be credible." *Id.*

The PCRA court appointed counsel to represent Appellant and counsel later filed an amended petition, which reiterated the claims that Appellant raised in his *pro se* petition. *See* Appellant's Amended PCRA Petition, 1/16/15, at 1-6.

On August 24, 2016, the PCRA court provided Appellant with notice that it intended to dismiss the petition in 20 days, without holding a hearing. PCRA Court Notice, 8/24/16, at 1; *see also* Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's petition on October 5, 2016 and Appellant filed a timely notice of appeal. Appellant raises two claims on appeal:[2]

> 1. Did the PCRA court err when it denied [Appellant's] amended petition that alleged trial counsel's ineffectiveness for opening the door to testimony from a detective which improperly bolstered the complainant's testimony?

---

[2] For ease of discussion, we have re-numbered Appellant's claims on appeal.

> 2. Did the PCRA court err when it denied [Appellant's] amended PCRA petition that alleged trial counsel's ineffectiveness for failing to object to testimony from a prosecutor that improperly bolstered one of the complainant's testimony?

Appellant's Brief at 3 (some internal capitalization omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See*

> *Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some internal quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Moreover, a PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. Specifically, a PCRA petition may be dismissed without a hearing if the PCRA court "is satisfied from [its review of the petition] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). If, however, the PCRA petition raises material issues of fact, the PCRA court "shall order a hearing." Pa.R.Crim.P. 908(A)(2). Thus, "[t]o

obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011) (internal quotations and citations omitted).

For Appellant's first claim on appeal, Appellant asserts that his trial counsel was ineffective "when trial counsel questioned [Police Officer Michael O'Brien] in a fashion that elicited testimony that [Officer O'Brien] found G.O. to be credible and opened the door for the district attorney to question [Officer O'Brien] about his belief that she was credible." Appellant's Brief at 9. This claim fails.

Appellant argues:

> [During trial counsel's cross-examination of investigating Police Officer Michael O'Brien, trial counsel] inexplicably asked Officer O'Brien if he believed G.O.'s word that [Appellant] raped her. The officer responded in the [affirmative], saying that he found G.O. to be a very credible complaining witness. Having thus opened the door to this impermissible testimony, the Commonwealth then elicited more testimony that the officer found G.O. to be credible, and that the officer does not proceed with cases in which he does not believe the witnesses to be telling the truth.

Appellant's Brief at 4 (internal citations omitted).

The above argument distorts the record and Appellant's claim thus fails.

During the cross-examination of Officer O'Brien, Appellant's trial counsel sought to establish that the only evidence against Appellant was G.O.'s word. Trial counsel's cross-examination of Officer O'Brien proceeded in the following way:

Q: If I understand your testimony, after you met with [G.O.], you didn't do any follow up investigation; is that correct?

A: I did the biographical information on [Appellant].

Q: Well, the biographical information on [Appellant], where did that come from?

A: His driver's license; I tried to get his date of birth and his address.

Q: Just the stuff on the computer, basically?

A: Yes.

Q: You didn't talk to any additional witnesses?

A: No.

Q: You didn't talk to, for example, [G.O.'s] mom, take a statement from her?

A: No.

Q: So, you didn't do anything. You just basically looked at a computer to determine my client's biographical information from the Department of Motor Vehicles; is that correct?

A: Yes.

Q: Then you prepared an arrest warrant, basically; is that correct?

A: Yes.

Q: So your testimony before this jury is that all that it took to arrest [Appellant] for the rape of [G.O.] was [G.O.'s] word; is that correct?

A: A very credible complainant, yes.

Q: You say a very credible complainant. You just testified before this jury that you did nothing to corroborate what she said; isn't that correct?

. . .

A: Yes.

Q: Thank you.

[Appellant's Attorney]: Nothing further.

N.T. Trial, 7/27/10, at 124-126.

The Commonwealth then questioned Officer O'Brien on redirect. In relevant part, Officer O'Brien testified:

Q: In your experience have you interviewed complainants you did not find credible?

[Appellant's Attorney]: Objection.

[The Commonwealth]: Counsel opened the door.

[Appellant's Attorney]: I didn't open the door to that.

[Trial Court]: I will allow it.

Q: Have you ever interviewed a complainant that you did not find to be credible?

A: Yes.

Q: In those instances did you still process the arrest?

[Appellant's Attorney]: This is where I am objecting. I move to strike.

[Trial Court]: Go ahead.

Q: In the instances where you did not find the complainant credible, did you still move forward with the arrest[?]

A: No.

[The Commonwealth]: Nothing [further].

[Appellant's Attorney]: Note my objection to the question.

[Trial Court]: So noted.

*Id.* at 126-127.

Appellant claims that his trial counsel was ineffective for "inexplicably ask[ing] Officer O'Brien if he believed G.O.'s word that [Appellant] raped her." Appellant's Brief at 4. According to Appellant, this question "opened the door" to "more testimony that the officer found G.O. to be credible, and that the officer does not proceed with cases in which he does not believe the witnesses to be telling the truth." *Id.* The record belies appellant's claim.

At the outset, trial counsel **did not** ask Officer O'Brien "if he believed G.O.'s word that [Appellant] raped her." *See id.* Rather, counsel posed the following question to the officer: "[s]o your testimony before this jury is that all that it took to arrest [Appellant] for the rape of [G.O.] was [G.O.'s] word; is that correct?" N.T. Trial, 7/27/10, at 125. This question requested a "yes" or "no" answer from the witness and was intended to highlight the absence of physical or other corroborating evidence in the case.

- 10 -

Importantly, however, the question did not ask Officer O'Brien "if he believed G.O.'s word that [Appellant] raped her." Rather, Officer O'Brien went beyond the question that was asked of him and volunteered his opinion that G.O. was "a very credible complainant." *See id.*

While trial counsel might have requested that the trial court strike Officer O'Brien's testimony regarding G.O.'s credibility, trial counsel did not do so – and Appellant has not claimed that trial counsel was ineffective for failing to move to strike the statement.

Appellant further claims that trial counsel's question "opened the door" to "more testimony that the officer found G.O. to be credible, and that the officer does not proceed with cases in which he does not believe the witnesses to be telling the truth." Appellant's Brief at 4. This assertion is faulty in numerous respects.

First, there was no "more testimony that the officer found G.O. to be credible." *See id.*; *see also* N.T. Trial, 2/27/10, at 126-127. Second, as was explained above, trial counsel's question did not "open the door" to Officer O'Brien's redirect testimony "that the officer does not proceed with cases in which he does not believe the witnesses to be telling the truth." *See* Appellant's Brief at 4. Instead, counsel asked Officer O'Brien to answer "yes" or "no" to the question: "[s]o your testimony before this jury is that all that it took to arrest [Appellant] for the rape of [G.O.] was [G.O.'s] word; is that correct?" N.T. Trial, 7/27/10, at 125. Again, while Officer O'Brien went beyond the question and volunteered his opinion that G.O. was "[a] very

- 11 -

credible complainant," Appellant's trial counsel did not move to strike the volunteered statement and Appellant has not claimed that trial counsel was ineffective for failing to so move. Regardless, it cannot be said that trial counsel's question "opened the door" to Officer O'Brien's redirect testimony "that the officer does not proceed with cases in which he does not believe the witnesses to be telling the truth," when trial counsel's question did not ask Officer O'Brien to opine on G.O.'s credibility. Thus, Appellant's claim of ineffectiveness with respect to Officer O'Brien's testimony has no arguable merit and fails.

Next, Appellant claims that his trial counsel was ineffective for "failing to object to testimony from a prosecutor that improperly bolstered [complainant G.O.'s] testimony." Appellant's Brief at 3. We conclude that the PCRA court erred when it dismissed this claim without holding an evidentiary hearing.

The Commonwealth's first witness at trial was G.O. As recounted above, G.O. testified that Appellant raped her on September 27, 2005. *See* N.T. Trial, 7/27/10, at 26-39. During cross-examination, Appellant attacked G.O.'s credibility by questioning her about a prior juvenile delinquency case, where she was also the victim and complainant. *Id.* at 69-75. This prior delinquency case took place in 2006, when the Commonwealth filed a delinquency petition against a juvenile named J.S. and accused him of committing the delinquent act of indecent assault against G.O. *See id.* at 97 and 101.

- 12 -

During the delinquency proceedings, G.O. wrote a letter to J.S., where she recanted her allegations against J.S. and declared that she and J.S. did not have sexual intercourse. *Id.* at 69-75. However, G.O. then repudiated her recantation and J.S. later pleaded guilty to committing the delinquent act of indecent assault against G.O.[3] *Id.* at 101.

During the cross-examination of G.O. in the case at bar, Appellant's trial counsel questioned G.O. as to whether she was untruthful in her initial report to the police, in the recantation letter, or in her repudiation of the recantation letter.[4] Trial counsel's cross-examination of G.O. transpired in the following manner:

Q: Let's talk about [J.S.]. You wrote a letter, did you not?

[Appellant's counsel]: And I will ask to have this marked as D-4.

[Trial Court]: So marked.

---

[3] The testimony regarding the factual predicate for the charges against J.S. is vague.

[4] Prior to trial, Appellant filed a motion *in limine* where he sought "to bring out evidence of [G.O.'s] past sexual conduct insofar as that conduct is shown by her having admitting false sexual abuse claims against other individuals." Appellant's Motion *in Limine*, 5/22/07, at 1-2. Specifically, Appellant sought to introduce evidence of G.O.'s recantation letter and her repudiation of the recantation letter in the case against J.S. *See id.* This evidence was not relevant to any issue other than G.O.'s credibility and, as will be explained later in this memorandum, was inadmissible under Pennsylvania Rule of Evidence 608. Nevertheless, the trial court granted Appellant's motion and the Commonwealth did not appeal the trial court's order. *See* Docket Entry at 6/21/07.

. . .

Q: I want you to look at the second to last page and tell me if you wrote that. . . .

A: Yes, I wrote this. It's my handwriting.

Q: I would like you to [read] it out loud, please.

A: "I feel real bad right now because I know my [mom] is pressing charges on you and got you locked up. But the thing I really feel bad for is I lied to everybody. I lied to the police officer, to my mom, the doctor, and to the guy at [Special Victims]. I lied to them, told them that I had sex with you, but you know and I know that we never had sex. I'm sorry about May 22 was a lie. I only told that to my mom and the police guy because I was scared of my mom and scared of everything that was going on. I was under a lot of pressure and I didn't know what to do. I'm sorry for everything. Hope everything calms down."

Q: So, your testimony was that you wrote this letter because [J.S.'s] mom told you to write it?

A: Yes.

Q: So, you lied at the request of somebody else; correct?

A: Yes.

Q: You knew this letter would be used hopefully to help [J.S.] and prevent him from being arrested; correct?

A: Yes.

Q: You lied at least on one occasion right then and there; right?

A: Yes.

Q: Then you later recanted your story to the police and to the District Attorney saying, no, this letter was a lie. He really did sexually assault me; correct?

A: No.

Q: No, you didn't?

A: That was what she wanted me to write.

Q: No, no, no. You don't understand my question. This letter is a lie; right?

A: Yes.

Q: And we both agree that somebody asked you to lie, and you willingly did that for them; correct?

A: Yes.

Q: Knowing full well that the police and the courts might act favorably on [J.S.], based on this lie; correct?

A: Yes.

Q: In other words, they might dismiss the case. That was your hope; right?

A: Yes.

Q: But later on [J.S.] goes to court; right?

A: Yes.

. . .

Q: Did you withdraw what you said about in this letter? Did you take it back?

A: Yes.

. . .

Q: Who did you talk to saying I take back this letter[?]

A: Because it was a lie. That's what his mom wanted me to say.

Q: But who did you eventually tell is what I'm trying to ask you? . . . Someone from the District Attorney's Office?

A: Yes.

Q: Now, my point is, you changed your story twice on [J.S.'s] case; right?

A: I don't know.

Q: Do you understand my question? My point is, you changed your story. On one occasion you said [J.S.] did it, and on another occasion you said he didn't do it, and then you said he did it again. Would that be accurate?

A: I guess. . . . Yes.

N.T. Trial, 7/27/10, at 69-75.

In an attempt to rehabilitate G.O., the Commonwealth next called assistant district attorney Kirsten Heine (hereinafter "ADA Heine") as a witness. *Id.* at 96. ADA Heine testified that, in August 2006, she was an assistant district attorney in the Juvenile Unit of the Philadelphia District Attorney's Office and was assigned the task of prosecuting J.S. *Id.* at 97-98. During its direct examination of ADA Heine, the Commonwealth questioned her on the way she handled the prior case against J.S. In relevant part, ADA Heine testified:

Q: And did it come to your attention in August of 2006 while you were handling that case that there had been a so-called recantation letter written by [G.O.]?

A: Yes.

. . .

- 16 -

Q: When that recantation letter came to your attention, what did you [do] as a result of that?

A: Well, I spoke to the police officers involved in the case, but the most important thing is I read the letter. I looked at what the factual background of the case was, what [G.O.'s] situation was, and then I spoke with [G.O.] about the letter after I had done all those things.

Q: What information did you get from her?

A: She told me that the recantation letter was not true, that what she had originally reported to the police is what happened, that she had been involved in a physical relationship with [J.S.], and that she had had sexual intercourse with him. I don't remember exactly what [] her assault acts were that were involved in the case, but I do remember that [the] original report to the police is what happened.

Q: When you receive such things as a recantation letter, are you required, or do you have certain responsibilities that you must take before you proceed one way or the other?

A: I wouldn't say that there are a list of guidelines, but obviously as a lawyer and a prosecutor you have an obligation not to put a case before a fact finder if you don't believe there is a good faith basis to prosecute the crime. So, if you don't believe a complainant, you can't call him as a witness to testify because he would be suborning perjury. So, if I believe there is a question of credibility, I have to really investigate that and feel confident that my final decision is accurate because of what I learned about the case.

Q: What did you do after you told us you met with [G.O.]? What did you do after that?

A: Based on everything about the case including her telling me that her original report to the police was accurate, I reported to the court . . . that I was ready to proceed to trial. . . .

> Q: Could you have moved forward to trial or moved forward with a guilty plea if you had questions about [G.O.'s] credibility?
>
> A: No, I wouldn't have. . . .

N.T. Trial, 7/27/10, at 98-104.

Appellant claims that trial counsel was ineffective for failing to object to the portions of ADA Heine's testimony where she expressed her belief that G.O. was credible in the prior case against J.S. According to Appellant, ADA Heine's testimony regarding G.O.'s credibility was inadmissible; further, Appellant claims that the testimony was prejudicial to his case because it "improperly bolstered [G.O.'s] testimony." Appellant's Brief at 3.

The Commonwealth argues that Appellant's ineffective assistance of counsel claim fails. First, the Commonwealth contends that Appellant's claim does not have arguable merit because "the question asked by the Commonwealth did not improperly bolster the victim, but rather explained why charges were pursued despite the fact that one of the victims had recanted allegations made in another case several years earlier." Commonwealth's Brief at 6. Second, the Commonwealth argues, Appellant's trial counsel had a reasonable basis for not objecting to the question because an objection would "emphasize and draw attention to the disputed testimony." *Id.* Finally, the Commonwealth claims that Appellant was not prejudiced by counsel's failure, as the trial court instructed the jury that the jury was the sole arbiter of a witness's credibility. *Id.*

We conclude that Appellant's claim has arguable merit and that Appellant's petition raises a genuine issue of material fact regarding the "reasonable basis" and "prejudice" prongs of his ineffective assistance of counsel claim. Therefore, we conclude that the PCRA court erred when it dismissed this claim without holding an evidentiary hearing.

At the outset, we disagree with the Commonwealth's contention that ADA Heine's testimony, regarding her belief in G.O.'s credibility, was admissible to explain "why charges were pursued [against J.S.] despite the fact that [G.O.] had recanted [her] allegations" against him. **See** Commonwealth's Brief at 6. In this case, it appears that the entire reason for calling ADA Heine as a witness was to rehabilitate G.O.'s credibility by calling an assistant district attorney as a witness, who would testify that, in the assistant district attorney's personal and professional opinion, G.O. was credible during a prior, specific instance. This was impermissible under our rules of evidence.

Pennsylvania Rule of Evidence 608 is entitled "A Witness's Character for Truthfulness or Untruthfulness" and declares:

> **(a) Reputation Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.

**(b) Specific Instances of Conduct.** Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) **the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct**; however,

(2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608 (emphasis added).

This Court explained the scope and applicability of Rule 608 – and its variance with Rule 404 – in **Commonwealth v. Minich**, 4 A.3d 1063 (Pa. Super. 2010).[5] In **Minich**, the defendant was charged with sexually abusing

_____

[5] Pennsylvania Rule of Evidence 404 is entitled "Character Evidence; Crimes or Other Acts" and declares, in relevant part:

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

*(Footnote Continued Next Page)*

two minor boys.  ***Id.*** at 1065.  Prior to trial, the Commonwealth filed a

motion *in limine*, where it sought to preclude the use of any evidence that

one victim was "caught in several lies" at school.  ***Id.*** at 1066.  As the

Commonwealth argued, the evidence was only relevant to the issue of the

*(Footnote Continued)* ————————

> (B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may:
>
>> (i) offer evidence to rebut it; and
>>
>> (ii) offer evidence of the defendant's same trait; and
>
> . . .
>
> (3) Exceptions for a Witness. Evidence of a witness's character may be admitted under Rules 607, 608, and 609.
>
> . . .
>
> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. . . .

Pa.R.E. 404.

victim's truthfulness; and, while Rule 608 permits a witness's credibility to be challenged with "evidence of the witness's general reputation for truthfulness or untruthfulness," Rule 608(b) "specifically prohibits a witness from supporting or attacking another witness's credibility with instances of specific conduct." *Id.* at 1069. Accordingly, the Commonwealth argued, evidence that the victim was "caught in several lies" at school was inadmissible under Rule 608(b), as it constituted an attack on the victim's credibility with an instance of specific conduct. *Id.*

The trial court denied the Commonwealth's motion and allowed the subject evidence at trial. *Id.* at 1070. As the trial court noted, Rule 404 permits admission of a victim's "pertinent trait."[6] The trial court held that,

---

[6] In 2013, the Pennsylvania Supreme Court rescinded and replaced the Pennsylvania Rules of Evidence. We note that the current version of Rule 404 differs slightly from the version that the ***Minich*** Court applied. Nevertheless, the differences between the current Rule 404 and the version at issue in ***Minich*** are not substantive. Indeed, as the explanatory comment preceding the Pennsylvania Rules of Evidence declares:

> The Pennsylvania Rules of Evidence were rescinded and replaced on January 17, 2013, and become effective on March 18, 2013. They closely follow the format, language, and style of the amended Federal Rules of Evidence. The goal of the Pennsylvania Supreme Court's rescission and replacement of the Pennsylvania Rules of Evidence was [] to make its rules more easily understood and to make the format and terminology more consistent, but to leave the substantive content unchanged.

Pa.R.E., Explanatory Comment, at ¶ 2.

since the defendant's "guilt or innocence depend[ed] largely on the credibility of [the victim's] testimony, . . . [the victim's] trait of character for truthfulness" was a "pertinent trait" at trial and, thus, specific instances of the trait were admissible under our rules of evidence. *Id.*; *see also* Pa.R.E. 405.

The Commonwealth filed an immediate notice of appeal and claimed, on appeal, that Rule 608 "exclusively controls the admissibility of all character evidence relating to testimonial truthfulness or untruthfulness." *Id.* Thus, the Commonwealth argued, evidence that the victim was "caught in several lies" at school was inadmissible under Rule 608, as the rule "provides that the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness's conduct." *Id.*

We held that the Commonwealth was correct and that the evidence was inadmissible under Rule 608. As we explained:

> Pa.R.E. 608 codifies the long established rule limiting the type of evidence admissible to challenge a witness's credibility, to evidence of the witness's general reputation for truthfulness or untruthfulness. . . .
>
> Pa.R.E. 404(a) applies to evidence regarding any "pertinent" character trait and, through the operation of case law codified in Pa.R.E. 405, allows evidence of specific conduct to prove the "pertinent" trait.
>
> [We hold that] a "pertinent" character trait for purposes of Pa.R.E. 404(a)(2)(i) **is limited to a character trait of the victim that is relevant to the crime or defense at issue in the case**. **Therefore, whenever the accused seeks**

- 23 -

**to offer character evidence for purposes of attacking or supporting the credibility of a victim who testifies, the admissibility of such evidence is governed by Pa.R.E. 608 and proof of specific incidents of conduct by either cross-examination or extrinsic evidence is prohibited.** To hold otherwise would allow the phrase "pertinent trait of character" in [Rule 404] to modify established case law defining the parameters of permissible evidence to impeach or bolster the credibility of witnesses.

*Minich*, 4 A.3d at 1069-1070 and 1072 (internal footnotes omitted) (emphasis added).

With respect to the case at bar, G.O.'s recantation letter and her subsequent repudiation of the recantation in the prior case against J.S. is only relevant to the issue of G.O.'s truthfulness. In other words, the evidence is not relevant to show that G.O. has any potential bias against Appellant or a motive to lie, and the one instance of recantation and repudiation concerning a prior sexual assault does not establish a *modus operandi* or a common scheme. *See* Pa.R.E. 404(b). Further, G.O.'s truthfulness was not a "pertinent" character trait for purposes of Rule 404(a)(2)(i), as it was not "relevant to the crime or defense at issue in the case" against Appellant. *See Minich*, 4 A.3d at 1072. Therefore, the evidence was not admissible under Rule 404.

As such, evidence of G.O.'s recantation letter and her subsequent repudiation of the recantation in the prior case against J.S. was inadmissible under Rule 608, as it constituted an attack on G.O.'s credibility by "extrinsic evidence concerning specific instances of [G.O.'s] conduct." *See* Pa.R.E. 608(b)(1). Further, and in following, ADA Heine's challenged testimony

constituted extrinsic evidence that **supported** G.O.'s credibility in one specific instance. Simply stated, under the plain language of Rule 608, the Commonwealth was not permitted to call ADA Heine and have her testify that G.O. was credible in one specific instance.[7] Pa.R.E. 608(b)(1); **see also Minich**, 4 A.3d at 1069-1072. Therefore, ADA Heine's testimony regarding this matter was inadmissible and, if trial counsel had objected to the testimony, Rule 608 would have required that the objection be sustained and the testimony stricken. Hence, Appellant's claim has arguable merit.

Moreover, we conclude that Appellant's petition raises a genuine issue of material fact with respect to the "reasonable basis" and "prejudice" prongs of his ineffective assistance of counsel claim, thus necessitating a hearing on the matter.

First, as to the "reasonable basis" prong, Appellant pleaded that his trial counsel had no reasonable basis for failing to object to ADA Heine's testimony. **See** Appellant's Amended PCRA Petition, 1/16/15, at 3. The Commonwealth, on the other hand, claims that Appellant cannot satisfy the reasonable basis prong because "counsel's decision not to object to this

_____

[7] Pennsylvania Rule of Evidence 609 permits the impeachment of a witness with evidence of a prior criminal conviction, where the conviction involved a crime of dishonesty or false statement. **See** Pa.R.E. 608(b) and 609. We note that G.O. was not convicted of any crime related to her recantation or her subsequent repudiation of the recantation in the J.S. case.

[testimony] was [] reasonable in order to not emphasize and draw attention to the disputed testimony." *See* Commonwealth's Brief at 6.

In the case at bar, the PCRA court did not hold an evidentiary hearing and Appellant's trial counsel did not explain the reason he failed to object to ADA Heine's testimony. Therefore, this Court is unable to determine whether Appellant's counsel did or did not have a reasonable basis for failing to object to ADA Heine's inadmissible testimony. *Commonwealth v. Spotz*, 870 A.2d 822, 832 (Pa. 2005) (declaring: "[the Supreme] Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions" and "[t]he fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking. Objections sometimes highlight the issue for the jury, and curative instructions always do"); *Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003) ("It is only in the most clear-cut of cases that the reasons for the conduct of counsel are clear from the record. Thus, only where the record clearly establishes that the action or omission of [counsel] was without a reasonable basis should the court resolve the reasonable basis prong absent a remand for an evidentiary hearing as to the strategy of counsel"). An evidentiary hearing on this issue is required.

Further, we conclude that Appellant properly pleaded the "prejudice" prong of his ineffective assistance of counsel claim and that an evidentiary hearing is also necessary on this issue.

Again, during trial, the Commonwealth called ADA Heine as a witness and ADA Heine testified that, after G.O. wrote the recantation letter in the J.S. case, ADA Heine met with G.O. ADA Heine testified that G.O. told her "that the recantation letter was not true, that what she had originally reported to the police is what happened, that she had been involved in a physical relationship with [J.S.], and that she had had sexual intercourse with him." N.T. Trial, 7/27/10, at 100. ADA Heine then testified:

> as a lawyer and a prosecutor you have an obligation not to put a case before a fact finder if you don't believe there is a good faith basis to prosecute the crime. So, if you don't believe a complainant, you can't call him as a witness to testify because he would be suborning perjury. So, if I believe there is a question of credibility, I have to really investigate that and feel confident that my final decision is accurate because of what I learned about the case.

*Id.* at 100-101.

Finally, ADA Heine testified that she would not "have moved forward to trial or moved forward with a guilty plea if [she] had questions about [G.O.'s] credibility" in the case against J.S. *Id.* at 102.

Appellant claims that he suffered prejudice from ADA Heine's inadmissible testimony, insofar as ADA Heine opined that G.O. was credible when she accused J.S. of assaulting her. Appellant's Brief at 7-9.

As our Supreme Court has held, "[g]enerally, a prosecutor commits improper bolstering when it places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony." *Commonwealth v. Reid*, 99 A.3d 427, 447 (Pa. 2014). Further, the Supreme Court held:

> [t]he question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury. . . . It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility.

*Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986) (internal quotations and citations omitted).

The case at bar does not involve a classic case of improper bolstering because ADA Heine was not Appellant's prosecutor (but was rather a witness for the Commonwealth)[8] and ADA Heine did not express an opinion as to

---

[8] *But see Commonwealth v. Tann*, 459 A.2d 322, 327 (Pa. 1983) (holding that there was improper bolstering when two attorneys for Commonwealth witnesses took the stand and testified that their clients had agreed to tell the truth at trial); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1042 (Pa. 2007) (recognizing *Tann*'s holding); *Commonwealth v. Maconeghy*, *(Footnote Continued Next Page)*

whether G.O. was credible when she accused Appellant of raping her. Nevertheless, ADA Heine's testimony was inadmissible under Pennsylvania Rule of Evidence 608 and ADA Heine's testimony could be understood to mean that, in ADA Heine's personal and professional opinion, G.O. was credible in her allegations against J.S. Compounding this is the fact that: ADA Heine is an assistant district attorney and, thus, comes from a position of governmental power, prestige, and influence; ADA Heine testified that it is a requirement of her job that she be able to determine whether to believe or disbelieve a complainant (which, essentially, declared that she is an expert in determining credibility); and, at trial in the case at bar, the Commonwealth did not present any physical evidence linking Appellant with the crimes against G.O. and J.D.R. (rather, the Commonwealth's case against Appellant wholly depended upon the credibility of G.O. and J.D.R.).

Under these facts, ADA Heine's testimony could have bolstered G.O.'s credibility in the eyes of the jury and led the jury to believe that, since ADA Heine believed G.O. in the prior case, G.O. was telling the truth in the case at bar. Further, this could have led the jury to believe that, since G.O. was telling the truth, so was J.D.R. Therefore, we conclude that Appellant has

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

171 A.3d 707, 712-713 (Pa. 2017) (holding that "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse" because "such testimony intrudes into the province of the jury relative to determining credibility" and constitutes "indirect vouching" for the complainant's credibility).

properly pleaded that he was prejudiced by trial counsel's failure to object to ADA Heine's inadmissible testimony, as Appellant has pleaded that, "but for counsel's errors, the result of the proceeding would have been different." ***Stewart***, 84 A.3d at 707. We thus vacate the PCRA court's order in part and remand for an evidentiary hearing. ***See***, ***e.g.***, ***Commonwealth v. Hughes***, 865 A.2d 761, 799 (Pa. 2004) ("the absence of a hearing and fact finding affects our ability to assess prejudice[;] . . . as the matter must be remanded for a hearing concerning the existence of a reasonable basis for counsel's actions, it is preferable that any assessment of prejudice be made, in the first instance, by a fact finder").

Order vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/18