**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 81 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court dated 6/12/15 at No. 2191 MDA |
| | : | 2014, reargument denied 8/13/15, |
| | : | vacating the judgment of sentence of |
| v. | : | 7/21/14 of the Court of Common Pleas |
| | : | of Lackawanna County, Criminal |
| | : | Division, at No. CP-35-CR-0001450- |
| | : | 2012 and remanding |
| KENNETH MACONEGHY, JR., | : | |
| | : | |
| Appellee | : | ARGUED:  March 8, 2017 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                          **DECIDED:  October 18, 2017**

The question presented concerns whether, in a criminal prosecution, a sexual abuse evaluator may testify to his opinion that a child was sexually assaulted, where there is no physical evidence of abuse, and the opinion is premised upon the expert's apparent acceptance of the child's reporting and description.

In 2011, when she was sixteen years old, the victim, C.S., reported that she had been raped and otherwise sexually abused repeatedly by her stepfather, Appellee Kenneth Maconeghy, Jr.  C.S. related that the assaults had occurred in the home that she shared with her mother, Appellee, and several siblings, during the summer months of 2005, when she was eleven years old.  Appellee was arrested and charged with various sexual crimes, including rape by forcible compulsion and rape of a child.

At trial, the Commonwealth presented several witnesses, including C.S., who testified to the abuse. Most relevant for present purposes, the prosecution also adduced testimony from Quentin Thomas Novinger, M.D., a pediatrician who had evaluated C.S. to determine whether she had suffered from sexual abuse.

On direct examination, Dr. Novinger explained that he regularly rendered consultative services on behalf of the Children's Advocacy Center for Northeastern Pennsylvania, and, in this capacity, he had been engaged to evaluate C.S. He indicated that he observed a forensic interview of C.S. and collected and reviewed other historical information, then he conducted a physical examination. Although Dr. Novinger found no evidence of abuse in the physical exam, he opined that, outside the first seventy-two hours after the occurrence of a sexual assault, such an examination is unlikely to detect evidence of the abuse. *See, e.g.*, N.T., Jan. 21, 2014, at 210. Thus, according to the pediatrician, the fact of abuse can be determined "[r]eally by history only." *Id.* at 206.

On cross-examination, the defense repeatedly attempted to secure a concession that the medical evidence did not support a determination of abuse, to which Dr. Novinger replied: "The history she provided to me pretty clearly indicated that she was sexually abused." *Id.* at 219; *see also id.* at 228 ("Clearly the medical encounter[, including the history,] indicated the child had been victimized."). On redirect, the district attorney posed a series of questions directed toward highlighting that a physical examination is not conclusive, culminating in the following interchange:

> [Prosecutor]: And when you're saying that your examination
> is normal, you're not saying that nothing happened, are you?
>
> [Dr. Novinger]: That's correct. I really believe strongly that
> was my medical conclusion that this child was victimized.

*Id.* at 229.

Appellee's lawyer did not lodge an immediate objection to any of these statements, but the following day he asked that the first of them be stricken from the record. *See* N.T., Jan. 22, 2014, at 21. The court noted the objection but reasoned that the opinion was appropriately grounded and that it would place undue emphasis on the testimony to reference it at that juncture. *See id.* at 22-23.[1]

Appellee was convicted of the charged crimes and lodged an appeal in the Superior Court, which vacated the judgment of sentence and remanded for a new trial. *See Commonwealth v. Maconeghy*, 2191 MDA 2014, *slip op.*, 2015 WL 7078462 (Pa. Super. June 12, 2015). In its opinion, the panel refused to consider Appellee's challenge to Dr. Novinger's statement that the history C.S. had provided indicated that she was sexually abused, because this was adduced by defense counsel on cross-examination. *See id.* at 10 n.5, 2015 WL 7078462, at *4 n.5. Accordingly, the panel focused on the pediatrician's statement, on redirect, offering a medical conclusion that C.S. had been victimized.

Initially, the panel recognized that the admissibility of expert testimony is a matter generally committed to the sound discretion of the trial courts. *See id.* at 6, 2015 WL 7078462, at *3. The panel explained, however, that experts are forbidden from opining as to the credibility of fact witnesses. *See id.* at 7, 2015 WL 7078462, at *3 (citing *Commonwealth v. Seese*, 512 Pa. 439, 443, 517 A.2d 920, 922 (1986)).

In this regard, the panel alluded to a series of decisions in which this Court had: determined that an expert had intruded on the jury's function via testimony that children generally do not fabricate reports of abuse, *Seese*, 512 Pa. at 444-45, 517 A.2d at 922;

---

[1] Dr. Novinger's expert report was also admitted into evidence without objection, in which he indicated that C.S. "provides a very credible disclosure of . . . sexual assault that occurred in the summer 5 years ago." N.T., Jan. 21, 2014, at 192 & Ex. C-4; N.T., Jan. 22, 2014, at 67.

disapproved expert testimony concerning typical behavioral patterns exhibited by sexually abused children, *see Commonwealth v. Balodis*, 560 Pa. 567, 576-77, 747 A.2d 341, 345-46 (2000); and held that expert testimony that a victim displayed behavioral patterns consistent with those typically displayed by sexually abused children was inadmissible, *see Commonwealth v. Dunkle*, 529 Pa. 168, 183, 602 A.2d 830, 837 (1992).[2] Further, the panel noted the Superior Court's own previous admonition that "the admissibility of expert testimony in child abuse cases must be evaluated cautiously in order to prevent encroachment upon the jury's function by the unfair enhancement of a child victim's credibility." *Maconeghy*, 2191 MDA 2014, *slip op.* at 7, 2015 WL 7078462, at *3 (quoting *Commonwealth v. Hernandez*, 420 Pa. Super. 1, 8, 615 A.2d 1337, 1340 (1992)). The panel also discussed the legislative enactment pertaining to expert testimony in various criminal proceedings involving sexual offenses, which now authorizes certain professionals to testify as to "specific types of victim responses and behaviors." 42 Pa.C.S. §5920(b)(2); *see supra* note 2. In particular, the panel highlighted the statute's disapproval of opinions about witness credibility. *See* 42 Pa.C.S. §5920(b)(3) ("The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.").

The panel concluded that Dr. Novinger's testimony that he believed that C.S. was sexually abused, based on her statements to such effect, "improperly constituted an opinion as to whether the victim was telling the truth, and intruded into the jury's function to assess the credibility of witnesses." *Maconeghy*, 2191 MDA 2014, *slip op.* at 9-10,

---

[2] The decisions in at least *Dunkle* and *Balodis* are impacted by the enactment of Section 5920 of the Judicial Code, which now permits certain expert witnesses to testify to facts and opinions regarding specific types of victim responses and behaviors. *See* 42 Pa.C.S. §5920(b)(2). *See generally Commonwealth v. Olivo*, 633 Pa. 617, 637, 127 A.3d 769, 781 (2015). It is beyond the scope of this opinion to discuss the specific effect of the statute on these cases.

2015 WL 7078462, at *4; *see also id.* at 10, 2015 WL 7078462, at *5 (indicating that Dr. Novinger's statements "encroached on the jury's function as the sole arbiter of credibility"). In this regard, the panel relied upon this Court's *Seese* decision, as follows:

> As our Supreme Court observed in *Seese,* "[s]uch testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called 'expert' assessment [of the class of people of which the particular witness is a member]. In addition, such testimony would imbue the opinions of 'experts' with an unwarranted appearance of reliability upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess."

*Id.* at 10-11, 2015 WL 7078462, at *5 (quoting *Seese,* 512 Pa. at 444, 517 A.2d at 922 (emphasis in original)). Given its determination that the testimony was inadmissible, and in light of the trial court's refusal to issue a curative instruction, the panel concluded that it was constrained to award a new trial. *See id.*

After the Superior Court denied reargument, this Court allowed appeal, limited to the following issue:

> Whether the Superior Court erred in finding that Dr. Novinger' statement that he believed the child was victimized encroached on the jury's function as the sole arbiter of credibility when the case law that the Superior Court relied on does not warrant such a result.

*Commonwealth v. Maconeghy,* ___ Pa. ___, ___ A.3d ___ (2016) (*per curiam*).[3]

---

[3] In its petition for allowance of appeal, the Commonwealth also sought this Court's review concerning whether Appellee had waived his challenge to Dr. Novinger's opinion and/or opened the door to that opinion. This Court, however, specifically declined review of those contentions, and we offer no opinion concerning their merits. Rather, we focus exclusively upon the issue accepted for review.

(continued…)

Presently, the Commonwealth argues that the Superior Court errantly failed to distinguish between cases that pertain to behavioral experts and those that involve medical professionals, such as Dr. Novinger. Relative to this proposed "behavioral/medical" distinction, the Commonwealth posits that "Pennsylvania case law has essentially determined what type of expert falls into the category of those whose testimony improperly bolsters the credibility of witnesses," *i.e.*, behavioral experts only. Brief for Appellant at 14; *see also id.* at 11 ("Dr. Novinger's testimony was *not* based on the behavior of the victim as compared to the typical victim of sexual assault." (emphasis in original)); *id.* at 24 (drawing a distinction between "objective medical facts" and "speculative explanations for patterns of behavior" (emphasis deleted)). The Commonwealth distinguishes Dr. Novinger's credentials as a medical doctor and stresses the depth of his training and experience. *See, e.g.*, *id.* at 6 (explaining that the pediatrician "testified that in the past 32 years, he evaluated between 500 and 1000 children"). Additionally, the Commonwealth draws support for the distinction that it

---

(…continued)

In dissent, Justice Mundy disregards the limited basis on which appeal was allowed, while criticizing this opinion for "reward[ing]" Appellee with a new trial. Dissenting Opinion, *slip op.* at 6 (Mundy, J.). We note that Justice Mundy's approach of addressing an issue which was expressly rejected at the allocatur stage is inconsistent with the many decisions in which this Court has disciplined itself to adhere to the questions selected for discretionary review. *See, e.g.*, *Commonwealth v. Watts*, 611 Pa. 80, 84 n.2, 23 A.3d 980, 982 n.2 (2011) (declining to consider arguments "encompass[ing] topics that are outside the scope of our grant of allowance of appeal"). The contrary approach of pursing unaccepted side issues obviously impedes the Court's ability to address the matters of substantial public importance that are selected for review. Moreover, Appellee would certainly be entitled to post-conviction consideration concerning the stewardship of his counsel relative to the case-specific concern raised by Justice Mundy (albeit that this Court's decision concerning the question of widespread public significance would be substantially delayed or thwarted). Accordingly, some circumspection is in order relative to the depiction of an undue "reward."

envisions from Section 5920 of the Judicial Code. *See id.* at 12 (opining that "the legislature codified the prohibition of a witness's opinion regarding credibility of the victim *only with regard to behavioral experts*, not medical experts like Dr. Novinger." (emphasis in original)).

The Commonwealth also denies that Dr. Novinger commented upon C.S.'s credibility at all, asserting that the pediatrician's testimony went only to his "medical encounter" with C.S. and did not concern her truthfulness. Brief for Appellant at 12. To the degree that this Court would discern any bolstering effect – and while otherwise recognizing that, under this Court's longstanding decisional law, *no* expert testimony is to be employed to validate the credibility of other witnesses -- the Commonwealth reverts to the more general proposition that such testimony is admissible if it will assist the trier of fact in understanding the evidence or in determining a fact in issue. *See* Pa.R.E. 702(b).

The Commonwealth also draws support from this Court's decisions in *Commonwealth v. Minerd*, 562 Pa. 46, 55-56, 753 A.2d 225, 230 (2000) (approving the admissibility of expert testimony explaining that the absence of physical trauma does not disprove abuse), and *Commonwealth v. Rounds*, 518 Pa. 204, 209-10, 542 A.2d 997, 999 (1988) (disapproving medical testimony that abuse had occurred on the ground that the testimony was based on a case history that was not before the jury). With regard to *Minerd*, the Commonwealth observes that the Court allowed the relevant expert testimony even though it had some effect in terms of enhancing the veracity of children. *See Minerd*, 562 Pa. at 55, 753 A.2d at 230. Concerning *Rounds*, the Commonwealth highlights that the Court did not disapprove diagnoses of abuse generally, but rather, relied on the absence of underlying record support for the

diagnosis. *See Rounds*, 518 Pa. at 209-10, 542 A.2d at 999. The Commonwealth also discusses several other cases from the Superior Court.

The Commonwealth concludes its argument with the following hyperbole: "Excluding an opinion based on a medical encounter because the evaluation included a history would make it impossible for a medical doctor to be presented as a witness in any case involving sexual assault, a result clearly not intended by our courts or legislature." Brief for Appellant at 34.[4]

As the Superior Court explained, evidentiary rulings are within the general province of the trial courts and will not be overturned by an appellate court absent an abuse of discretion, as, for example, when the law is overridden or misapplied. *See, e.g.*, *Commonwealth v. Flor*, 606 Pa. 384, 414, 998 A.2d 606, 623 (2010). In terms of the applicable law, expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field. *See* Pa.R.E. 702. Under longstanding Pennsylvania precedent pertaining to jury trials, however, determining witness credibility is exclusively the function of jurors, and expert

---

[4] This case does not concern many of the complex permutations in the child sexual assault arena, such as cases in which medical experts premise their conclusions at least in part upon physical findings or speak in general terms about victim characteristics. Accordingly, the above statement is not well taken.

The appeal also does not govern the "myriad forms of salutary expert opinion evidence" envisioned by the dissent. Dissenting Opinion, *slip op.* at 16 (Todd, J.). *See generally Oliver v. City of Pittsburgh*, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011) (explaining that the holding of a judicial decision is read against its facts) (citing *Commonwealth v. McCann*, 503 Pa. 190, 195, 469 A.2d 126, 128 (1983))). What it does concern is the admissibility of testimony by a sexual abuse evaluator predicated on a child-victim's account and tied directly to the ultimate issue in the case concerning whether the defendant perpetrated sexual crimes.

witnesses are specifically prohibited from invading this province. *See, e.g.*, *Commonwealth v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) (holding that the issue of witness credibility is within the knowledge of the average layperson and must be determined solely by the finder of fact).

Upon our review, we hold that an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse. We find that such testimony intrudes into the province of the jury relative to determining credibility. Such conclusion is consistent with a wide body of decisions in other jurisdictions. *See, e.g.*, *United States v. Charley*, 189 F.3d 1251, 1267 n.23 (10th Cir. 1999) (collecting cases); *State v. Buchholtz*, 841 N.W.2d 449, 459 (S.D. 2013) (same).

The decision in *State v. Iban C.*, 881 A.2d 1005 (Conn. 2005), is illustrative and is essentially on all fours with the issue presented in this case.[5] There, a pediatrician testified in a child sexual assault case that the complainant manifested no physical signs of abuse; the physician nevertheless rendered a diagnosis of abuse based both upon the physical examination and the complainant's history developed by an investigative team. *See id.* at 1013-14. The Connecticut Supreme Court held that the trial court had abused its discretion in admitting such testimony, because the pediatrician's opinion was inextricably tied to her belief in the complainant's veracity. In this regard, the court reasoned:

> [B]y [the pediatrician's] own admission, her diagnosis depended on a belief in this same credibility [that was central to the jurors' determination] because her ultimate

---

[5] Parenthetically, dictum from the *Iban C.* decision was subsequently questioned by the Connecticut Supreme Court on grounds of tangential relevance to the present decision. *See State v. Favoccia*, 51 A.3d 1002, 1022-24 (Conn. 2012); *see also infra* note 10.

assessment was based almost entirely on the history provided by the victim and the victim's mother to the investigation team. [The pediatrician's] diagnosis of child sexual abuse, therefore, necessarily endorsed the victim's credibility, and functioned as an opinion as to whether the victim's claims were truthful.

*Id.* at 1015. Additionally, the Connecticut court determined that the opinion evidence "was not helpful to the jury in deciding the precise question on which it had to pass." *Id.* at 1016-17. The court proceeded to distinguish the circumstances from cases in which expert testimony concerning the general characteristics of sexual assault victims had been permitted, *i.e.*, testimony that did not specifically link those characteristics to the complainant. *See id.* at 1015.[6]

Other courts have variously characterized expert opinions that children have been sexually assaulted in the absence of physical evidence as "putting a certificate of veracity on the child's testimony," *Buchholtz*, 841 N.W.2d at 459; "bolstering credibility, *id.* at 458; "merely vouching," *Charley*, 189 F.3d at 1267; and "indirect vouching," *Favoccia*, 51 A.3d at 1025. *See generally Buchholtz*, 841 N.W.2d at 458 & n.4 (collecting cases for the proposition that "[m]ost jurisdictions restrict this type of expert testimony, raising concerns about improper bolstering of credibility and invading the province of the jury on determining an ultimate issue"). We are in full agreement with the assessment of these courts in the relevant regard. Consistent with the Connecticut jurisprudence, we find no material distinction between direct vouching (*e.g.*, "I believe

---

[6] *Accord Charley*, 189 F.3d at 1267; *Tex S. v. Pszcolkowski*, 778 S.E.2d 694, 708-09 (W. Va. 2015); *State v. Kromah*, 737 S.E.2d 490, 500 (S.C. 2013); *State v. Towe*, 732 S.E.2d 564, 568 (N.C. 2012); *Buchholtz*, 841 N.W.2d at 459; *State v. Southard*, 218 P.3d 104, 113 (Or. 2009); *State v. Mars*, 170 P.3d 861, 876-77 (Haw. 2007); *People v. Peterson*, 537 N.W.2d 857, 868, *amended on other grounds*, 548 N.W.2d 625 (Mich. 1995); *People v. Taylor*, 552 N.E.2d 131, 138-39 (N.Y. 1990).

the complainant is telling the truth") and indirect vouching (*e.g*, "I conclude that the complainant was sexually assaulted based upon the history she related.").

Most courts also recognize the high stakes involved in child sexual assault cases and the potential power and persuasiveness of testimony by those clothed with the mantle of professional expertise. *See, e.g.*, *Peterson*, 537 N.W.2d at 868 (reflecting the Michigan Supreme Court's appreciation that the risks associated with expert vouching in child sexual assault cases are exacerbated by "the nature of the offense and the terrible consequences of a miscalculation" given that, "[t]o a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat" (quoting *People v. Beckley*, 456 N.W.2d 391, 404 (Mich. 1990) (plurality))).[7]  Accordingly, the courts have attempted to devise appropriate and necessary limitations, albeit differing in various respects concerning the appropriate balance to be stricken.

Significantly, this Court's previous decisions place Pennsylvania among a minority of jurisdictions in which the highest court has taken a most restrictive approach. For example, although a majority of jurisdictions would appear to allow the prosecution to adduce expert testimony concerning general characteristics of sexual assault victims, *see* 23A C.J.S. CRIMINAL PROCEDURE AND RIGHTS OF ACCUSED §1506 (2017), this Court's

---

[7] *Accord Maryland v. Craig*, 497 U.S. 836, 868, 110 S. Ct. 3157, 3175 (1990) (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.) (cautioning that courts should be particularly vigilant in ensuring fairness to defendants in child sexual abuse cases, given reliability issues associated with the suggestibility of children and the concomitant possibility of distorted or coerced recollections).  *See generally Commonwealth v. Topa*, 471 Pa. 223, 232, 369 A.2d 1277, 1282 (1977) (recognizing that expert testimony and scientific proofs carry the potential to "assume a posture of mystic infallibility in the eyes of a jury of laymen" (quoting *United States v. Addison,* 498 F.2d 741, 744 (D.C. Cir. 1974))).

decisions had disapproved of such evidence on the grounds that it invades the province of jurors. *See, e.g.*, *Balodis*, 560 Pa. at 576-77, 747 A.2d at 345-46.[8] It would be incongruous indeed for the Court to now forge a minority pathway on the opposite side of the spectrum by sanctioning the admission of evidence having a more direct bolstering effect specific to the complainant.

In response to the Commonwealth's effort to distinguish medical experts from behavioral ones, the credentials of medical professionals do not insulate them from the prohibition against invading the province of jurors. *See, e.g.*, *Southard*, 218 P.3d at 112 (reasoning, relative to a physician's diagnosis of abuse, that "[t]he fact that the diagnosis came from a credentialed expert, surrounded with the hallmarks of the scientific method, created a substantial risk that the jury 'may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence'" (quoting *State v. Brown*, 687 P.2d 751, 773 (Or. 1984))).[9] Along these lines, the

---

[8] *See generally Favoccia*, 51 A.3d at 1025 (classifying Pennsylvania among a small minority of jurisdictions concerning this issue); Note, Dyane L. Noonan, *Where Do We Go From Here? A Modern Jurisdictional Analysis of Behavioral Expert Testimony In Child Sexual Abuse Prosecutions*, 38 Suffolk U.L. Rev. 493, 503-05 (2005) (same).

The more prevalent controversy in other cases has generally been whether an expert may link a specific complainant to those general characteristics. *See Favoccia*, 51 A.3d at 1009 (concluding that, "although expert witnesses may testify about the general behavioral characteristics of sexual abuse victims, they cross the line into impermissible vouching and ultimate issue testimony when they opine that a particular complainant exhibited those general characteristics").

[9] In this vein, the Commonwealth's position that Section 5920 of the Judicial Code pertains only to "behavioral experts" as such is quite tenuous. Indeed, with his impressive training and experience in the evaluation of sexual abuse, Dr. Novinger would likely be quite surprised to hear that he is not a professional with "specialized training or education in . . . victim services issues . . . related to sexual violence." 42 Pa.C.S. §5920(b)(1). The focus of Section 5920 simply is not on the particularized credentials of the expert, but rather, on sanctioning the admission of qualified expert (continued…)

Commonwealth's references to a broader "medical encounter" also are not persuasive, since Dr. Novinger grounded his opinion on the history provided by C.S. *See, e.g.*, N.T., Jan. 21, 2014, at 219. Thus, the opinion is inextricably intertwined with the veracity of her statements.

We acknowledge that a number of states allow the admission of a medical diagnosis of child sexual assault where this is premised, at least in part, upon physical findings. *See, e.g.*, *State v. Chandler*, 697 S.E.2d 327, 331 (N.C. 2010) ("[F]or expert testimony presenting a definitive diagnosis of sexual abuse, an adequate foundation requires supporting physical evidence of the abuse."). Notably, a well-developed decision in this line of cases both carefully delineates relevant criteria to be assessed in determining admissibility and reaffirms that, in the absence of physical evidence of abuse, such diagnoses are inadmissible. *See State v. Beauvais*, 354 P.3d 680, 689-90 (Or. 2015). Because, however, there was no physical evidence of abuse in the present case, we are not called upon here to determine the admissibility of expert testimony in circumstances where physical evidence is present or to consider what if any restrictions should attend admission.[10]

---

(…continued)
testimony "regarding specific types of victim responses and victim behaviors." *Id.* §5920(b)(2).

[10] We also do not presently have the occasion, in the aftermath of the passage of Section 5920 of the Judicial Code, to determine whether or to what extent experts may opine that a child-complainant's behavior or symptoms are "consistent with" abuse. Notably, jurisdictions are divided on this issue as well. *Compare, e.g.*, *Iban C.*, 881 A.2d at 1015 (approving of the "consistent with" phraseology), *with Favoocia*, 51 A.3d at 1023-24 (disapproving of the same). *See generally United States v. DeNoyer*, 811 F.2d 436, 438 & n.3 (8th Cir. 1987) (characterizing "consistent with" as "the customary cautious professional jargon of the medical profession for what lawyers would speak of as causation"). The Superior Court's opinion in *Commonwealth v. Ferguson*, 377 Pa. Super. 246, 546 A.2d 1249 (1988), which is referenced in the parties' briefs, touches on (continued…)

With regard to *Minerd* and *Rounds*, the evidence in *Minerd* fell within the class of *generalized* evidence about victims of sexual assault that is more widely approved in the courts and was focused on a physical examination; indeed, the Court specifically noted that the expert witness "confirmed that she was not stating that the alleged acts did or did not occur" relative to the complainant. *Minerd*, 562 Pa. at 52, 753 A.2d at 228. *Rounds* did concern expert testimony particular to the complainant, but the decision may have been shaped by the manner in which the issues were presented to the Court. Accordingly, while *Rounds* may provide some inferential evidence that the Court was not then consciously inclined to disapprove expert witness opinions that abuse has occurred within the contours of the case as it had developed, *see Rounds*, 518 Pa. at 207, 542 A.2d at 998 (observing an expert witness's opinion that a child was sexually abused, without disapproving of the testimony other than on the ground that the underlying history was not adduced at trial), there is no developed reasoning in the opinion on this subject.[11] Thus, we decline to accord material significance to that decision in this case. Finally, to the extent there is any conflict between our present opinion and those of the Superior Court cited in the parties' briefs or otherwise, the latter are now disapproved in the relevant respect.

---

(…continued)

this issue, albeit that it predates Section 5920. Review of that decision is also beyond the scope of our review here.

[11] From *Rounds*, Justice Todd draws the proposition that "the expert testimony on a subject other than witness credibility is not transformed into an opinion on the subject of credibility solely because it is founded on a witness's prior statements." Dissenting Opinion, *slip op.* at 13 (Todd, J.). There is no evidence that any such issue was ever presented to the Court in *Rounds*; certainly the *Rounds* Court did not actually make this pronouncement; and we reject the notion that precedent should be discerned by inferences of the sort drawn by the dissent.

In summary, we agree with the Superior Court, as well as the wide body of decisions from other jurisdictions, that expert testimony opining that a child has been sexually abused -- which is predicated on witness accounts and not physical findings -- is inadmissible.  Our decision is limited according to the terms of this opinion as expressed throughout.  For example, we are not presently assessing whether, or under what circumstances, such evidence may be appropriate in light of physical findings or as fair response on redirect examination or in rebuttal.

The order of the Superior Court is affirmed.


Justices Baer, Donohue and Dougherty join the opinion.

Justice Todd files a dissenting opinion.

Justice Mundy files a dissenting opinion.

Justice Wecht did not participate in the consideration or decision of this case.