J-A25014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2777 EDA 2017 |

Appeal from the Dispositional Order July 25, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-JV-0000044-2017

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 13, 2018**

Appellant, C.S., appeals from the July 25, 2017 Dispositional Order entered in the Delaware County Court of Common Pleas, which ordered Appellant to be placed on probation after the juvenile court adjudicated him delinquent for Sexual Assault. After careful review, we affirm.

We summarize the relevant factual and procedural history as follows. On July 16, 2016, Appellant, L.E. ("Victim"), and D.B. ("Friend") were hanging out in Friend's basement at approximately 2:00 P.M. When Friend went upstairs to answer a phone call, Appellant and Victim were alone together and Appellant sexually assaulted Victim.

On January 13, 2017, the Commonwealth filed a Juvenile Delinquent Petition charging Appellant with Rape, Indecent Deviate Sexual Intercourse, Sexual Assault, and related offenses.

On July 18, 2017, the juvenile court held an adjudicatory hearing. The Commonwealth presented testimony from Victim and Victim's mother ("Mother"). Appellant testified on his own behalf and presented testimony from Friend.

Victim testified to the following version of events. Victim stated that after Friend went upstairs to answer a phone call, Appellant grabbed her arm, followed her around the room, and tried to remove her underwear over her protests. Victim testified that Appellant was able to remove her underwear, which prompted her to walk away into an adjacent laundry room. Appellant followed Victim into the laundry room and back into the room with the couch. Victim testified that she continued to tell Appellant to leave her alone but Appellant placed himself on top of Victim, forcibly penetrated her vagina with his penis, and ejaculated onto her dress. Shortly thereafter, Friend returned to the basement.

Victim testified that when Appellant was leaving a few minutes later and tried to give her a hug, she pushed him away and told him not to touch her. Friend walked Appellant out of the house.

Upon Friend's return, Victim began to cry and told Friend what happened. Victim went home and disclosed the incident to her sister and Mother, who called the police. Victim stated that Mother drove Victim to the hospital where hospital staff performed a rape kit.

The Commonwealth presented evidence that testing revealed the presence of Appellant's DNA on Victim's dress and underwear.

Mother testified that Victim returned home around 4:30 P.M. and she observed Victim come into the home and sit down on the couch without speaking to anyone. Mother stated that Victim "looked startled like something had happened . . . ." N.T. Hearing, 7/18/17, at 40. When Mother asked Victim what happened, Victim initially stayed quiet but eventually disclosed the sexual assault.

The Assistant District Attorney for the Commonwealth ("ADA") asked Mother to describe her observations of Victim: "Okay. And how – could you describe her condition at the that time? Her mannerisms, her demeanor? Was she happy, sad?" *Id.* at 42. Mother responded: "I would say sad, traumatized." *Id.* The ADA then asked for clarification: "What were the signs that she was as you say, traumatized?" *Id.* Mother responded: "Withdrawn, tearful." *Id.*

Appellant presented testimony from Friend, who testified that he was upstairs during the incident and did not hear anything. Friend also testified that Victim disclosed the sexual assault to him after Appellant left the home, but then contacted him later to discuss withdrawing the charges.

Appellant testified that he had consensual sexual intercourse with Victim, which Victim initiated.

On July 25, 2017, the juvenile court found Appellant guilty of Sexual Assault, adjudicated Appellant delinquent, and placed Appellant on probation.

Appellant timely appealed.  The juvenile court did not order Appellant to file a Pa.R.A.P. 1925(b) Statement.  On October 31, 2017, the juvenile court filed a Pa.R.A.P. 1925(a) Opinion.

Appellant raises the following issue for our review:

> Whether the juvenile court erred when it permitted the [Mother] to testify, over [Appellant]'s objections, regarding her opinions that the [Victim] was "traumatized" and that "something had happened," because the [Mother] lacked personal knowledge regarding what occurred and the [Victim]'s emotional state, she was not qualified as an expert as was necessary for her to express an opinion regarding trauma and sexual assault victim behavior, and she improperly intruded upon the province of the fact-finder by expressing an opinion about the [Victim]'s credibility?

Appellant's Brief at 5.

In this sole issue on appeal, Appellant challenges the evidentiary rulings made by the court during the adjudicatory hearing.  Appellant specifically challenges the juvenile court's decision to allow Mother to testify that Victim was "traumatized" and that "something had happened." *Id.*

We review a juvenile court's evidentiary rulings for an abuse of discretion.  *In re N.C.*, 629 A.3d 1199, 1210 (Pa. 2014).  The Pennsylvania Rules of Evidence limit lay witness testimony in the form of an opinion to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. A lay witness "may testify to distinct facts observed by him concerning the apparent physical condition or appearance of another." *Commonwealth v. Counterman*, 719 A.2d 284, 301 (Pa. 1998). Moreover, a lay witness may testify as to certain matters involving health and obvious symptoms, but "his testimony must be confined to facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is only discoverable through the training and experience of a medical expert." *Cominsky v. Donovan*, 846 A.2d 1256, 1259 (Pa. Super. 2004) (citation omitted).

Appellant first argues that Mother lacked personal knowledge regarding the incident that occurred and Victim's emotional state, so it was improper for her to testify that Victim was "traumatized" because "something had happened." Appellant's Brief at 14. However, Appellant mischaracterizes Mother's testimony.

Mother did **not** testify that an incident occurred and, as a result, Victim was traumatized. Rather, Mother testified to her personal observation of Victim's physical condition and appearance, stating that when Victim returned home, "[s]he just sat down and she **looked** startled like something had happened." N.T. Hearing, 7/18/17, at 40 (emphasis added). When the ADA specifically asked Mother to describe Victim's condition, mannerisms, and demeanor, Mother responded, "I would say sad, traumatized*." **Id.***

In context, Mother did not testify as to what Victim's actual emotional state was, or that something actually happened. Rather, Mother's testimony

- 5 -

concerned her observations about Victim's physical condition and appearance and was, therefore, admissible. Accordingly, the juvenile court did not abuse its discretion when it permitted lay opinion testimony about Victim's physical condition and appearance.

Appellant next argues that the juvenile court improperly admitted Mother's testimony that Victim was "traumatized" because Mother was not qualified as an expert to diagnose such a condition. Appellant's Brief at 15. Once again, Appellant misconstrues Mother's testimony.

Our review of the testimony, in context, reveals that Mother did not diagnose Victim with the medical or psychological condition of "trauma." Rather, Mother testified that she observed Victim to be "sad, traumatized." N.T. Hearing, 7/18/17, at 42. When the ADA asked Mother to elaborate and explain why she thought Victim appeared "traumatized," Mother stated that Victim was "[w]ithdrawn, tearful." *Id.* Mother did not render a medical or psychological diagnosis, but rather used the word "traumatized" as an adjective to describe Victim's appearance. Moreover, Mother did not base her testimony on scientific, technical, or other specialized knowledge that Pa.R.E. 701 prohibits. Once again, Mother's lay opinion testimony regarding Victim's physical condition and appearance was admissible, and, thus, Appellant's second argument lacks merit.

Finally, Appellant cites *Commonwealth v. Maconeghy*, 171 A.3d 707 (Pa. 2017), to argue that Mother improperly intruded upon the province of the fact-finder by expressing an opinion about Victim's credibility. Appellant's

Brief at 16. Appellant asserts that Mother opined, "something had happened" and, therefore, impermissibly bolstered Victim's credibility. *Id.*

In *Maconeghy*, the Commonwealth presented a pediatrician as an expert witness, who rendered an expert opinion that a child had suffered sexual abuse. Although the pediatrician's physical examination of the child showed no evidence of abuse, he based his opinion on: (1) his observation of a forensic interview of the child; and (2) his review of other historical information. *Id.* at 708. Our Supreme Court held that "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse." *Id.* at 712. The Court found that "such testimony intrudes into the province of the jury relative to determining credibility." *Id.* The facts in *Maconeghy* are easily distinguished from the instant case.

Here, the Commonwealth did not present Mother as an expert witness and Mother did not render an opinion as to whether or not Victim experienced a sexual assault. Rather, as stated above, Mother testified to her observations regarding Victim's physical condition and appearance when she returned home from the sexual assault. Accordingly, Mother's observations that Victim appeared "sad, traumatized" and "looked startled like something had happened" did not improperly intrude onto the province of the fact-finder to determine credibility and, thus, Appellant's final argument does not entitle him to relief.

In conclusion, the juvenile court did not abuse its discretion when it admitted Mother's testimony about Victim's physical condition and appearance after the sexual assault.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/18