**[J-57-2023] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 102 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated April 5, 2022 |
| | : | at No. 446 MDA 2021 Affirming the |
| v. | : | Judgment of Sentence of the |
| | : | Wyoming County Court of Common |
| | : | Pleas, Criminal Division, dated |
| PHILLIP DONALD WALTERS, | : | December 10, 2020 at No. CP-66- |
| | : | CR-0000058-2019. |
| Appellant | : | |
| | : | ARGUED:  October 18, 2023 |

## DISSENTING OPINION

**JUSTICE MUNDY**                                    **DECIDED:  September 23, 2024**

The majority holds, *inter alia*, that Dr. Ross' expert opinion as to Lorenzen's cause of death was not offered to a reasonable degree of medical certainty and that the error in admitting Dr. Ross' testimony at trial was not harmless.  Majority Op. at 23-24.  Dr. Ross rendered his unchallenged expert opinion to "a reasonable degree of medical certainty." N.T., 10/26/20, at 36.  That, in my view, resolves this appeal.

The analysis of the majority fails to address or acknowledge the defense's deficient attempt at issue preservation, choosing instead to turn a blind eye to this fact in favor of resolving whether a medical expert can issue an opinion to a reasonable degree of medical certainty based solely on case history.  Since Dr. Ross testified to his practice of consulting case history, in addition to conducting an independent examination of the body, and no other expert testimony was presented in this appeal to challenge his methodology, the issue is clearly unpreserved.  Thus, I dissent.

## I. Waiver

At the outset, it is clear Appellant failed to challenge Dr. Ross' methodology in arriving to an opinion on Lorenzen's cause of death. Before this Court, Appellant argues, *inter alia*, that Dr. Ross improperly "relied on the statements of [Gabel] Bell because there was no independent evidence of strangulation." Appellant's Brief at 37. *See also id.* at 49-50 ("Dr. Ross possessed no objective evidence upon which to opine that the cause and manner of death was homicide by strangulation."). Clearly, Appellant is challenging Dr. Ross' methodology, *i.e.*, consulting the case's history when rendering an opinion. Indeed, most of the lead opinion is dedicated to discussing and deciding whether a pathologist may rely on case history when determining a decedent's cause of death.

Appellant, however, did not request a *Frye*[1] hearing at any point before the trial court or otherwise aver that the use of case history to formulate an opinion on cause of death is not generally accepted in the scientific community. Nor did Appellant produce any expert witness in the field of pathology to counter the testimony or methodology of Dr. Ross. Instead, in his pre-trial filing, entitled "Motion to Dismiss Prosecution or, in the Alternative, Motion in Limine to Limit Evidence and Testimony at Trial" ("Motion"), Appellant set forth allegations of "hearsay upon hearsay," while seeking dismissal of all

---

[1] "[A] *Frye* hearing, named after the seminal decision in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), is a hearing held for the trial court to determine whether the general scientific community has reached a general acceptance of the principles and methodology used by the expert witness." *Commonwealth v. Walker*, 92 A.3d 766, 769 n.1 (Pa. 2014). "[A] hearing is warranted only when the trial court 'has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions.'" *Commonwealth v. Jacoby*, 170 A.3d 1065, 1091 (Pa. 2017). Clearly, an objection to the methodology and a request for a *Frye* hearing was an appropriate legal vehicle for Appellant to raise the issue in this case, which he failed to do.

charges for purported intentional prosecutorial misconduct.[2]  While Appellant referred to Dr. Ross' use of history in formulating his opinion, he did not, as he does now, explicitly challenge Dr. Ross' methodology.[3]

At the ensuing pre-trial hearing, Appellant explained the role of the coroner's office, stressing that those employed within may not "engage in any course of conduct that favors the defense or the prosecution[.]"  N.T., 11/7/19, at 22.  *See also id.* at 23 (arguing that the "report contains allegations that you would normally find in a criminal complaint instead of a medical examiner's report") and 26-27 (indicating that he consulted with somebody who is obtaining their doctorate in forensic anthropology about Dr. Ross' report and that this individual found some statements made to be "unusual.").  Appellant's prior hearsay concerns were later repeated at trial.  *See* N.T., 10/26/20, at 13 (stating, in relation to the introduction of Dr. Ross' report, that certain portions contained hearsay).  Defense counsel also inquired into Dr. Ross' use of case history on cross-examination,

---

[2] *See e.g.*, Motion, 10/22/19, at 10, ¶ 30 ("[T]he District Attorney has infected the independence of an expert witness['] report required to be issued by law by counseling or suborning the expert to infect the report with hearsay, supposition, and inflammatory rhetoric.").  *See also id.* at 12, ¶ 40 (stating, **in the context of seeking the dismissal of all charges**, "that the Cause of Death' identified as 'Strangulation (By History)' is a statement unsupported to a reasonable medical certainty and, as such, has no place [i]n a report purporting to be an independent medical examination") ¶ 41 (claiming, under the header "the district attorney is creating expert evidence to prejudice the jury," that "hearsay statements couched as 'by history' are also unsupportable by the evidence collected and do not constitute findings of a medical nature regularly found in similar reports" (unnecessary capitalization omitted)); ¶ 42 (asserting that Dr. Ross "has become a *de facto* agent of the District Attorney's Office") and *id.* at 10, ¶ 32 ("[T]he claimed '[h]istory' is merely hearsay upon hearsay.").

[3] Rather, he sought to prohibit the introduction of Dr. Ross' report and any testimony related thereto because the report was "not produced and [the] independence of [the] expert [was in] question."  *Id.* at 17 (unnecessary capitalization omitted).  *See also id.* (reiterating that "the report contains inflammatory conclusions and statements that are not the proper subject of a medical report").

*see id.* at 48-49, but did not attempt to gather any information regarding whether history is commonly utilized in this field of medicine.[4] It was only during post-trial proceedings that Appellant articulated, for the first time, his true concern with respect to Dr. Ross' methodology. In my view, this belated argument was insufficient to preserve the issue that is now before us and has resulted in the issuance of an opinion despite a woefully underdeveloped record.

I also share the same concerns as my learned colleague with respect to the preservation of Appellant's bolstering claim. *See* Concurring and Dissenting Opinion (Dougherty, J.) at 4 ("Nowhere in his motion in limine did [A]ppellant use the word bolster or otherwise raise an argument along those lines. Nor did he raise any objection on that ground at trial. The first time he raised such an argument was in his post-sentence motion. . . . That was too late."). Accordingly, I am inclined to conclude that waiver precludes our review.

## II. Reasonable Degree of Medical Certainty

Setting aside glaring waiver, I observe that, it is well-settled that "[t]he admission of expert testimony is a matter of discretion for the trial court, and will not be disturbed absent an abuse of discretion." *Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015). *See also Commonwealth v. Leslie*, 227 A.2d 900, 903 (Pa. 1967) (explaining that "[e]xpert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge,

---

[4] In addition to referencing his pre-trial motion, in his brief to this Court, Appellant asserts that he preserved his issue "in his argument during [] trial[.]" Appellant's Brief at 24 (citing N.T., 10/26/20, at 13-16). However, the cited portion of the transcript reveals only an objection to the admissibility of certain parts of the pathologist's report on hearsay grounds.

intelligence[,] and experience." (quotation mark omitted)); and Pa.R.E. 702(a)-(c) (providing that an expert witness "may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson; (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (c) and the expert's methodology is generally accepted in the relevant field").

Our Rules of Evidence provide that "[a]n expert may base an opinion on facts . . . that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Pa.R.E. 703. Pertinently, "[w]hether the facts or data satisfy this requirement is a preliminary question to be determined by the trial court under Pa.R.E. 104(a)[(Preliminary Questions)]."  *Id.*, cmt.  *See also Commonwealth v. Williams*, 316 A.2d 888, 891 (Pa. 1974) ("To permit evidence of a medical opinion as to cause of death to be considered by the trier of fact it must be shown only that the witness entertained a reasonable degree of medical certainty for his conclusions. The test of reasonable doubt is a legal one and it is the test that the jury must use in determining whether the expert opinion taken together with all of the other evidence in the case warrants the finding of the cause of death as suggested by the expert, beyond a reasonable doubt.").

In this case, Dr. Ross candidly described the difficulties with performing an autopsy of Lorenzen's body, testifying that at the time her body was discovered, it was in an advanced state of decomposition.  *See* N.T., 10/26/20, at 18 ("[T]he body was in a very advanced state of decomposition"); at 20 ("[A]gain, the decomposition of the body was so extensive"); at 23 ("That the body was in a very advanced state of decomposition and severely decomposed as a result of being out in the elements for approximately six

months"); at 25 ("And again, I must caution you that examination was very limited because of the decomposition changes"). However, he was able to rule out certain diseases[5] and testified that based on his independent examination and understanding of the case's history, he could determine to a reasonable degree of medical certainty that Lorenzen's cause of death was strangulation by history. *Id.* at 31, 36. In particular, as noted by the Commonwealth,

> Lorenzen had no bleeding, trauma, or fractures to the brain or skull. Lorenzen had no fractures to the skeletal system. Lorenzen had no knife, cutting, or gunshot wounds. Lorenzen had no track or needle marks indicating drug use. There was no indication from the autopsy that Lorenzen died from cancer, infection, organ failure, any type of disease, or any type of natural medical condition.

Commonwealth's Brief at 10 (internal citations omitted). *See also* N.T., 10/26/20, at 48 (Dr. Ross explaining that he "determined the cause and manner of death by history and the exclusion of everything else from the autopsy"); and Trial Ct. Op., 3/11/21, at 6 (noting that "[a]fter thoroughly testifying regarding both the external and internal examination of [] Lorenzen, Dr. Ross testified that he concluded that the cause of death was that she died by strangulation which was by history and made within a reasonable degree of medical certainty"). Most notably, Dr. Ross answered in the affirmative when asked whether: (1) rendering an opinion based on history is something he has done in other cases; and (2) his conclusions were made within a reasonable degree of medical certainty. *See* N.T., 10/26/20, at 32, 36. This unchallenged expert testimony resolves the issue raised by Appellant in this appeal.

---

[5] *See* Commonwealth's Brief at 10 ("Regarding the process of elimination, Dr. Ross testified as follows: Lorenzen had no external trauma [other than the absent hands and feet]. Lorenzen had no congenital anomalies. Lorenzen had no heart disease. Lorenzen had no diseases of the pulmonary system, liver, pancreas, spleen, or adrenals. Lorenzen had no disease or trauma to the genitourinary system or gastrointestinal tract" (internal citations omitted)).

Before this Court, Appellant argues that the trial court erred in allowing Dr. Ross to offer an opinion concerning Lorenzen's cause of death because his conclusions were based only on Bell's account of the events and were therefore not rendered to a reasonable degree of medical certainty. Notwithstanding my issue with how Appellant characterized the testimony elicited by the Commonwealth, Rule 702 clearly provides that an expert witness may testify in the form of an opinion if, *inter alia*, "the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702(c).

Here, Dr. Ross, having been permitted to testify as an expert witness at Appellant's trial after a stipulation by the parties, *see id*. at 10 ("Both parties have agreed that [Dr. Ross is] an expert"), explained that he was able to determine Lorenzen's cause of death to a reasonable degree of medical certainty based on an examination of Lorenzen's body and the history provided. Importantly, at that time, Dr. Ross answered in the affirmative when asked whether it is "common" in his "practice to utilize information provided by the police in reaching [his] conclusions[.]" *Id.* at 17. In fact, the pathologist confirmed that he has consulted the relevant history to render an opinion on cause of death in other cases. *Id.* at 32.

This testimony remained uncontradicted, as Appellant did not seek to introduce any evidence suggesting that the methodology utilized by Dr. Ross in reaching his opinion is not generally accepted within the medical community.[6] There is nothing in the record

---

[6]Justice Wecht, citing *Walsh v. BASF Corp.*, 234 A.3d 446, 456 (Pa. 2020) (discussing, *inter alia*, the *Frye* test), emphasizes that it is the proponent of expert testimony that must demonstrate its admissibility. *See* Concurring Opinion (Wecht, J.), at 6 n.16. I do not disagree. However, critically, Appellant never raised any evidentiary challenge to the methodology employed by Dr. Ross. Also, Appellant neither sought a *Frye* hearing, nor did he meaningfully counter Dr. Ross' testimony that relying on case history to formulate an opinion on cause of death to a reasonable degree of medical certainty is accepted practice within the medical community. Stated differently, the defense who stipulated to Dr. Ross' role as an expert in this case did not seek to counter the expert's testimony in any meaningful way.

to suggest that utilizing case history in the manner employed by Dr. Ross is not an accepted or approved practice in pathology.[7]   Under these circumstances, I cannot find that the trial court abused its discretion in admitting Dr. Ross' testimony.[8]

### III. Harmless Error

In a single page, the majority summarily rejects the Commonwealth's suggestion that any error in admitting Dr. Ross' testimony was harmless.   Criticizing the Commonwealth's development of this point, the majority finds that there was no attempt made to "demonstrate that the overwhelming evidence of Appellant's guilt renders any error in the admission of Dr. Ross' testimony harmless."  Majority Op. at 23.

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that [a] defendant is entitled to a fair trial but not a perfect one.

---

[7] In fact, the majority seemingly acknowledges that there are circumstances in which a pathologist may rely on case history when forming an opinion.  *See* Majority Op. at 19 ("We need not decide in this case the extent to which an expert may rely on case history in formulating his or her opinion as to cause of death . . . [.]").

[8] Also, and assuming *arguendo* that this claim is properly preserved, I  disagree with the suggestion that Dr. Ross' testimony  improperly bolstered Bell's credibility.  *See Commonwealth v. Maconeghy*, 171 A.3d 707, 715 (Pa. 2017) (holding that "expert testimony opining that a child has been sexually abused—which is predicated on witness accounts and not physical findings—is inadmissible").  Unlike the expert in *Maconeghy*, some of Dr. Ross' statements contradicted Bell's trial testimony, as Dr. Ross relayed that "he was unable to corroborate several of Bell's statements, including that Lorenzen had been struck by a hammer prior to her death, and that her body had been dropped from a great height."  Majority Op. at 14 (footnote omitted).  *See also Maconeghy*, 171 A.3d at 715 (emphasizing the limited nature of its decision, as this Court was "not presently assessing whether, or under what circumstances, such evidence may be appropriate in light of physical findings or as fair response on redirect examination or in rebuttal").  Dr. Ross also qualified his statements regarding the cause of death, explaining that his conclusion was strangulation **by history**.  Thus, the doctor was forthcoming regarding his consideration of Bell's statements when formulating an opinion on cause of death.  Bell's credibility, however, was still for the jury to decide.

*Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (citation and internal quotation marks omitted).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671–72 (Pa. 2014) (citations omitted).

At trial, the jury heard testimony from several individuals, including Bell, who had an intimate relationship with Appellant and testified in detail about the circumstances surrounding Lorenzen's death. Regarding Dr. Ross' testimony, as aptly observed by the Commonwealth, the pathologist "merely agreed with [] Bell, following his autopsy of [] Lorenzen, that the manner of death was homicide and the cause was strangulation[.] . . . Dr. Ross declined to adopt any other factual averment made by [] Bell despite being prompted to do so." Commonwealth's Brief at 24. For example, Dr. Ross admitted that he would sometimes expect to find broken bones if it were alleged that a body was dropped from a bridge into the water. N.T., 10/26/20, at 42. He also conceded that he was aware of allegations that Lorenzen was struck in the head with a hammer but went on to explain that he did not see "any evidence of fractures or any indentations that a hammer might have made." *Id.* at 50. *See also id.* at 55 (stating that due to the significant decomposition of Lorenzen's body, he could not, "by autopsy alone[,] state that the decedent was strangled").

Given the substance of Dr. Ross' testimony and his repeated disclosures regarding the limitations of his autopsy, the jury was still required to assess Bell's credibility. *See* fn.4, *supra*. If believed, this testimony, along with other properly admitted evidence, would

have been sufficient to find Appellant guilty of the charged crimes. *See Commonwealth v. Cox*, 333 A.2d 917, 918 (Pa. 1975) ("It is well established in Pennsylvania that circumstantial evidence alone may be sufficient to determine commission of a crime and convict the accused of it.").

For these reasons, I dissent.