J-S32003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONSHAY LAMAR CALHOUN | : | |
| | : | |
| Appellant | : | No. 212 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 10, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005052-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONSHAY LAMAR CALHOUN | : | |
| | : | |
| Appellant | : | No. 213 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 10, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003607-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:        **FILED: NOVEMBER 22, 2022**

In these consolidated appeals, Donshay Lamar Calhoun appeals from the judgments of sentence entered against him following his convictions, at two separate dockets, of statutory sexual assault and related offenses based on charges that he sexually assaulted two of his paramour's daughters.

Calhoun now challenges the weight of the evidence supporting his convictions and the admission of certain expert testimony. After careful review, we affirm.

Calhoun became romantically involved with the complainants' mother ("Mother") in 2012, and he moved into the family's home on West King Street in York, Pennsylvania shortly thereafter.[1] At the time, A.K. was approximately 13 years old and N.K. was approximately 11 years old.[2] Calhoun often supervised the children while Mother was at work or school. Eventually, A.K. and N.K. began to view Calhoun as a father figure.

The family moved to a house on Prospect Street in Lower Windsor Township, York, Pennsylvania. The first assault against A.K. occurred in spring 2013, while Mother was at work. A.K. described laying on Mother's bed, and Calhoun "put his penis into [her] vagina," then ejaculated into her mouth. *See* N.T. (Jury Trial), 3/2/21, at 156-59. A.K. testified that these assaults occurred weekly, and sometimes more frequently, while they lived at the Prospect Street house. *See id.* at 159-50. Calhoun never used a condom. *See id.* at 160. On one occasion, Calhoun gave A.K. a "small yellow pill" and instructed her to take it. *See id.* at 162; *see also id.* at 172 (wherein A.K. testified, "For about two to three months, anytime that he would ever ejaculate and there would be anything left inside of me, he would give me a plan B pill.").

---

[1] In addition to A.K. and N.K., Mother had three other children.

[2] Calhoun is approximately 18 years older than A.K. and nearly 20 years older than N.K.

The family later moved to a house on Locust Street in York. The assaults on A.K., who was 14 years old at that time, continued while they lived at this address. *See id.* at 165. Around this time, Calhoun also performed oral sex on A.K., and A.K. performed oral sex on Calhoun. *See id.* at 165-66.

A.K.'s relationship started to change when she was 15 and the family moved to a house on Jackson Street in York. A.K. stated that the sexual incidents were still occurring but became more sporadic. *See id.* at 169-70. She described being in high school, "growing up wanting to experience new different things, and [Calhoun] was very against that." *Id.* at 170. Around this time, A.K. began to deny Calhoun's requests for sex; Calhoun would sometimes try to convince her but eventually backed down. *See id.* at 172.

The family also moved to North Carolina, where A.K. stated the assaults continued, albeit less frequent. *See id.* at 177-78. A.K. explained that she "didn't want to continue doing it because at that point [she] kind of understood that this was wrong and it shouldn't have been happening." *Id.* According to A.K., she was 18 years old at the time of her last sexual contact with Calhoun. *See id.* at 179.

The first assault against N.K. occurred in the Locust Street home, when N.K. was 13 years old. *See* N.T. (Jury Trial), 3/3/21, at 237. Calhoun expressed to N.K. that he had a dream about her and asked if they could "do something together." *Id.* Calhoun asked to rub his penis on N.K.'s tongue, and when N.K. stated that she was scared, Calhoun told her to close her eyes.

*See id.* at 238-39. At some time after that incident, Calhoun told N.K. to lie on Mother's bed and "he touched all over [her] body." *See id.* at 240-41; *see also id.* at 242 (clarifying that Calhoun touched N.K.'s breasts, vagina, stomach, and legs, both over and under her clothing).

Later, Calhoun asked N.K. to perform oral sex on him, and eventually, he initiated vaginal sex. *See id.* at 243-50. N.K. recalled the assaults occurring "at least every month." *Id.* at 251. This pattern of behavior continued after the family moved to the Jackson Street house. *See id.* at 258.

N.K. testified the abuse continued in North Carolina and continued after the family later moved to South Carolina. *See id.* at 260-64. While living in South Carolina in 2017, when N.K. was 16 years old, N.K. became pregnant. *See id.* at 264. At trial, the parties stipulated to the DNA results indicating a 99.99995% probability that Calhoun was the father of N.K.'s child.[3] *See* Commonwealth's Exhibit 10 (NMS Labs Forensic Biology Final Report). N.K. testified that Calhoun initially instructed her to hide the pregnancy with clothing, and when Calhoun determined they needed to leave, N.K. packed her things and the two spent several weeks in Florida. *See* N.T. (Jury Trial), 3/3/21, at 269-72.[4]

---

[3] N.K.'s child was born in December 2017.

[4] While any offenses committed in North Carolina and South Carolina are not at issue in the instant case, this series of events is relevant in that it prompted N.K. to confide in A.K. *See* N.T. (Jury Trial), 3/3/21, at 268-69.

A.K. first reported Calhoun via a written statement provided to police in South Carolina in 2017, after she learned about N.K.'s pregnancy. *See* N.T. (Jury Trial), 3/2/31, at 215-18. She was told she had to speak with Pennsylvania police, which she did a few days later. *See id.* at 216. N.K. spoke with police in October 2018. *See* N.T. (Jury Trial), 3/3/21, at 295-96. Based on the girls' reports and the DNA testing results, police arrested and charged Calhoun.

Prior to trial, the Commonwealth filed notice of its intention to present Amber Crawford Wagman[5] as an expert in factors surrounding sexual violence, victims' responses to sexual violence, and the impact of sexual violence of victims during and after being assaulted pursuant to 42 Pa.C.S.A. § 5920.[6]

---

[5] Wagman has a master's degree in social work and is a licensed social worker.

[6] Section 5920 governs expert testimony in cases involving sexual offenses and provides, in relevant part, as follows:

**(b) Qualifications and use of experts.--**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

*(Footnote Continued Next Page)*

Calhoun filed an objection arguing, *inter alia*, that Wagman's testimony would be based on conjecture and speculation because the testimony would be based on categorical opinions. Following a hearing, the trial court denied Calhoun's motion and permitted the Commonwealth to introduce Wagman as an expert witness.

The cases were consolidated for a jury trial. At trial court docket No. 3607-2019, relating to A.K., Calhoun was convicted of two counts each of statutory sexual assault – 11 or more years older than complainant, indecent assault – complainant less than 16 years of age, and corruption of minors, and one count of involuntary deviate sexual intercourse ("IDSI") – complainant less than 16 years of age. At trial court docket No. 5052-2019, relating to N.K., Calhoun was convicted of two counts each of statutory sexual assault – 11 or more years older than complainant, IDSI – complainant less than 16 years of age, indecent assault – complainant less than 16 years of

---

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S.A. § 5920(b)(1)-(3).

age, and corruption of minors, and one count of aggravated indecent assault – complainant less than 16 years of age.[7, 8]

The trial court deferred sentencing pending completion of a pre-sentence investigation report, as well as an assessment by the Sexual Offender Assessment Board ("SOAB") to determine whether Calhoun is a sexually violent predator ("SVP"). Following the combined SVP and sentencing hearing, the court designated Calhoun an SVP and notified him of his sexual offender registration requirements.[9] The trial court sentenced Calhoun, at No. 3607-2019, to an aggregate term of 28 years, 9 months to 57½ years in prison, and at No. 5052-2019, to an aggregate term of 37½ to 75 years in prison.

_____

[7] Under both dockets, offenses with multiple counts reflect incidents occurring at different locations.

[8] *See* 18 Pa.C.S.A. §§ 3122.1(b), 3126(a)(8), 6301, 3123(a)(7), 3125(a)(8).

[9] While it is not immediately clear from the record, based on the time period in which Calhoun committed these offenses, the trial court imposed the registration requirements under the Sex Offender Registration and Notification Act ("SORNA"), *see* 42 Pa.C.S.A. §§ 9799.10-9799.41. *See Commonwealth v. Martinez*, 147 A.3d 517, 522 (Pa. 2016) (explaining that Megan's Law, *see* 42 Pa.C.S.A. §§ 9791-9799.7, expired on December 20, 2012, when SORNA became effective). The sexual offender registration notice provided to Calhoun states the registration requirements are contained in Megan's Law but identifies the requirements for updating registration information after the effective date of December 20, 2012. Further, the trial court's opinion describes the SVP factors provided under section 9799.24 of SORNA.

Calhoun filed a timely post-sentence motion arguing, *inter alia*, that the sentences imposed for his statutory sexual assault convictions were beyond the statutory maximum and therefore illegal. *See* 18 Pa.C.S.A. § 1103(1) (establishing a maximum sentence of 20 years in prison for a first-degree felony). The trial court withdrew the relevant sentences at both dockets. At No. 3607-2019, the trial court imposed concurrent sentences of 114 to 228 months, for an amended aggregate sentence of 20 years, 3 months to 40½ years in prison. At No. 5052-2019, the trial court imposed sentences of 117 to 234 months, to run concurrent with one another, for an amended aggregate sentence of 27 years, 9 months to 55½ years in prison. Additionally, the court directed the sentences imposed at each docket to run consecutive with one another, for a total aggregate sentence of 48 to 96 years in prison. After a hearing, the trial court denied Calhoun's post-sentence motion in all other respects. Calhoun filed timely notices of appeal, one at each docket number, and a court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[10]

In his first claim, Calhoun asserts the verdict was against the weight of the evidence. *See* Appellant's Brief at 21. Calhoun claims the testimony advanced by A.K. and Mother about Calhoun's work schedule contradicted N.K.'s testimony, and the inconsistencies undermined Calhoun's availability to

---

[10] This Court consolidated Calhoun's appeals *sua sponte*.

commit the offenses. ***See id.*** at 21-22. Further, Calhoun "submits that the testimony of both victims that the abuse occurred in the home with at least 5 other people present without anyone noticing is unlikely considering the size and layout of the houses in which they lived." ***Id.*** at 22.[11]

A weight of the evidence claim is addressed to the discretion of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Talbert***, 129 A.3d 536, 545-46 (Pa. Super. 2015) (citation omitted).

In its order and opinion denying Calhoun's post-sentence motion, the trial court reviewed the "cherry-picked inconsistencies" as follows:

> The magnitude of inconsistency is not what [Calhoun] portrays it as. For instance, as noted above, [Calhoun] claims that neither of the [complainants] identified the King Street address as a location they had resided at, which is patently false. … Of course,

---

[11] Calhoun's entire argument on this issue consists of only two pages. Further, despite vaguely referencing inconsistencies between the complainants' and Mother's testimony, Calhoun has failed to direct us to the relevant portions of the trial transcripts. ***See*** Pa.R.A.P. 2119(a) (providing an appellant's argument must include citation and discussion of relevant authorities), (c) (directing appellants to cite relevant portions of the record).

[Calhoun] is likely trying to indicate that the King Street address was not identified by the [complainants] as an address where abuse occurred. We respond with a resounding "And?" The jury was free to find the facts. Discrepancies are to be expected—especially where a crime occurs over a period of years against young victims and in different locations. Of course investigators and [complainants'] memory and recording of details will contain inconsistencies. Yet, the amount of detail in the breadth of such crimes presented by the [complainants] was astounding and credible.

As to A.K.'s identifying the date of the first instance of abuse and, previously, matching it to an impossible date of the week, the testimony also shows that A.K. testified that she was confused on details due to attempts to put the abuse behind her. Additionally, as was elicited on redirect, by the time of trial, some eight years had elapsed. The jury was presented an explanation for this inconsistency that seems entirely plausible considering the extended timeline of abuse.

Arguably, there are pieces of evidence which undermine the Commonwealth's case; however, the test is not whether there is any evidence that goes against the Commonwealth's assertions. Rather, [the trial c]ourt is to examine whether the verdict was so contrary to the evidence as to shock one's sense of justice. It was not. In light of the compelling and consistent evidence favoring conviction, we were not shocked and, therefore, we were barred from overturning it. Upon receiving the verdict, we did not lose our breath or threaten to slip from the bench. In spite of some inconsistencies, present in all cases, but especially in the he-said-she-said sort involving sexual abuse, Lady Justice is still firmly rooted atop her pedestal.

Trial Court Opinion and Order, 12/30/21, at 3-4 (quotation marks and citations to the record omitted).

Calhoun essentially asks us to reassess the credibility of A.K. and N.K. and to reweigh the evidence presented at trial. However, even "in instances where there is conflicting testimony, it is for the jury to determine the weight to be given the testimony. The credibility of a witness is a question for the

fact-finder." ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003) (citation omitted). Upon review, we conclude the evidence adequately supports the trial court's determination that the verdict was not so contrary to the evidence as to shock its conscience. Therefore, Calhoun is not entitled to relief on this claim.

In his second claim, Calhoun avers Wagman's testimony improperly bolstered the complainants' credibility. ***See*** Appellant's Brief at 23. Calhoun claims the expert testified about the complainants' behaviors (*i.e.*, delayed reporting, feelings of affection for Calhoun) without personally interacting with the complainants. ***See id.*** at 24. According to Calhoun, the expert's testimony implies "that there is no behavior the fact-finder should find strange or possibly demonstrating a motive to lie or make[ ]up events." ***Id.*** at 24.[12]

We review evidentiary rulings for an abuse of discretion. ***See Commonwealth v. Cramer***, 195 A.3d 594, 605 (Pa. Super. 2018).

> In terms of the applicable law, expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or determine a fact in issue; and the expert's methodology is generally accepted in the relevant field. ***See*** Pa.R.E. 702. Under longstanding Pennsylvania precedent pertaining to jury trials, however, determining witness credibility is exclusively the function of jurors, and expert witnesses are specifically prohibited from invading this province.

---

[12] Calhoun has failed to cite to specific portions of Wagman's testimony in which he believes Wagman rendered an inappropriate opinion concerning the complainants' credibility. ***See*** Pa.R.A.P. 2119(a), (c).

*Commonwealth v. Maconeghy*, 171 A.3d 707, 712 (Pa. 2017) (some citations omitted).

Calhoun correctly points out that our Supreme Court in *Maconeghy* recognized a concern that expert testimony could improperly bolster the credibility of a child witness in an abuse case. *See id.* at 713. In *Maconeghy*, the pediatrician who testified as an expert opined the child victim had been victimized based on the history the child provided, where a physical examination revealed no indication of abuse. *See id.* at 108. The Court concluded the pediatrician's testimony improperly bolstered the victim's testimony under those circumstances and held that "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witnesses accounts couched as a history, at least in the absence of physical evidence of abuse." *Id.* at 712.

Here, unlike in *Maconeghy*, Wagman did not provide an expert opinion on the issue of whether A.K. and N.K. had been abused based on their own recounting. As Calhoun acknowledges in his brief, Wagman had not spoken with A.K. or N.K., reviewed police reports, or otherwise been provided with details about this case. *See* Appellant's Brief at 23. Wagman did not offer an opinion about the victims' testimony or whether their responses to the sexual abuse was "normal." Rather, our review of the trial transcripts reveals that Wagman provided only general testimony about how victims of sexual abuse might respond to trauma and factors that could affect the trauma responses.

***See Cramer***, 195 A.3d at 608 (concluding that expert's testimony did not improperly bolster victim's credibility where expert was not provided with a factual account of case, had not spoken to the victim, and "she testified generally about the manner in which victims of sexual abuse respond to an assault."). Accordingly, Wagman's testimony complied with the requirements of section 5920, and we discern no abuse of the trial court's discretion in permitting Wagman's expert testimony. Calhoun is not entitled to relief on this claim.

Based upon the foregoing, we affirm Calhoun's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022