J-S42030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYLER WILLIAM HENDRICKS | : | |
| | : | |
| Appellant | : | No. 168 MDA 2024 |

Appeal from the PCRA Order Entered January 8, 2024
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000723-2019

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: JANUARY 29, 2025**

Tyler William Hendricks ("Hendricks") appeals from the order entered by the Northumberland County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA")[1] after an evidentiary hearing.  Hendricks claims he received ineffective assistance of counsel based upon trial counsel's failure to respond when an expert witness impermissibly testified that she found the sexual assault victim in this case to be credible.  Upon review, we conclude that the trial court erred in denying relief and therefore reverse the order of the PCRA court and remand for proceedings consistent with this memorandum.

---

[1] 42 Pa.C.S. §§ 9541-9546.

We glean the following factual and procedural history from the certified record. On the night of March 9, 2019, Hendricks, then twenty-seven years old, messaged M.B., then fifteen years old, on Facebook Messenger, a social media application. N.T., 4/5/2022, at 23-28, 55-56, Exs. 1-5 (Facebook Messenger messages). They had known each other for about a year through M.B.'s father, B.B., and lived near and saw each other in the neighborhood. *Id.* at 22, 33, 49-50, 53, 55, 71-72. They exchanged several messages on Facebook Messenger that night, including one where they talked about how their age difference "suck[ed]." *Id.* at 27-28, 55, 74, Ex. 3. Eventually, Hendricks asked M.B. to use Snapchat. *Id.* at 28, 55-56, Ex. 5. According to M.B., they moved their messages to Snapchat because its messages delete by default and they both agreed not to save them. *Id.* at 28, 35, 55. M.B. testified that their Snapchat messages turned sexual and Hendricks asked her if she could keep a secret. *Id.* at 28, 35, 38, 56. When she said yes, M.B. stated that Hendricks asked to exchange nude pictures of each other, which she said they did. *Id.* at 28, 38, 56. M.B. testified that they talked about having sex with each other, and when M.B. voiced concerns about feeling nervous and her father getting "mad," Hendricks reassured her, told her it would be quick because she's "younger" and "tighter," and instructed her to bring a condom. *Id.* at 28-29, 38. According to M.B., she initially tried to walk alone to Hendricks' location, but after she got lost, Hendricks escorted her sometime between midnight and 1:00 a.m. to the house where he was

staying.[2]  *Id.* at 29-30, 38, 56.  Once there, M.B. testified that they had vaginal sex on the kitchen floor.  *Id.* at 30-31, 39, 57.  After they had sex and as M.B. was getting dressed, M.B. recounted that Hendricks' sleeping daughter started to awaken and he asked M.B. to leave.  *Id.* at 31, 39, 57.  M.B. stated that she walked back to her house alone.  *Id.* at 31, 39, 57.

M.B. testified that she told her sister about the incident a few days later, and the sister in turn told their father.  *Id.* at 31-32, 36, 50.  B.B. then took M.B. to the police station on March 15, 2019, where she gave a statement to City of Sunbury Police Officer Earl Johnson.  *Id.* at 32, 50-51, 57, Ex. 6 (M.B.'s police statement).  Officer Johnson unsuccessfully attempted to contact Hendricks.  *Id.* at 59, 63-64.  About a month later, on April 18, 2019, Stacy Brightbill conducted a forensic interview of M.B. at the Child Advocacy Center in Sunbury, Pennsylvania.  *Id.* at 33, 41, 45, Ex. 8 (video of select portion of M.B.'s interview).

Immediately thereafter, police arrested Hendricks and charged him with statutory sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault, corruption of minors, criminal use of a communication

---

[2] Hendricks lived at his mother's house but "from time to time" he stayed overnight at his girlfriend's house across the street; he shared two children with his girlfriend and stayed overnight with them when she was away on business trips.  *Id.* at 82-83, 100, 106.  The record is not entirely clear where the incident occurred.

facility, indecent assault, and possession of child pornography.[3]  Hendricks posted bail and was released on April 23, 2019.  The matter proceeded to a one-day jury trial on April 5, 2022.  The Commonwealth presented the testimony of M.B.; her father, B.B.; Ms. Brightbill, who the trial court qualified as an expert in forensic interviewing; and Officer Johnson.  The Commonwealth further admitted as exhibits the Facebook Messenger messages, a portion of M.B.'s forensic interview video, M.B.'s police statement, and Hendricks' signed waiver of his ***Miranda***[4] rights.  Hendricks testified in his own defense and presented the testimony of his mother, Tara McKenna Owen; his sister, Catherine Williams; and his friend, Abigail Schnader.  Except for the Facebook Messenger messages, Hendricks denied the entire incident and said M.B. was lying.  ***Id.*** at 74-75, 78-79.  Ms. Owen testified that she was at her house that night and did not hear her dogs barking, anyone coming or going, or anything unusual.  ***Id.*** at 91-92.  Ms. Williams and Ms. Schnader testified that they were in a hot tub in Ms. Owen's backyard that night and did not see anyone entering or leaving Ms. Owen's home.  ***Id.*** at 96, 98.

---

[3] 18 Pa.C.S. §§ 3122.1(b), 3123(a)(7), 3125(a)(8), 6301(a)(1)(ii), 7512(a), 3126(a)(8), 6312(d).  Prior to trial, the Commonwealth withdrew the involuntary deviate sexual intercourse charge.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).  Although Hendricks signed the waiver, he did not give a statement to police.  ***See*** N.T., 4/5/2022, at 85-88.

Following trial, a jury convicted Hendricks of all charges. On September 1, 2022, the trial court sentenced him to an aggregate term of seven to fourteen years of incarceration to be followed by three years of probation. Hendricks filed a timely notice of appeal with this Court but discontinued his appeal on February 13, 2023.[5]

On March 30, 2023, Hendricks filed a counseled PCRA petition, his first. Hendricks contended that he was entitled to relief because trial counsel was ineffective in failing to object, move to strike, request a cautionary instruction, or request a mistrial when Ms. Brightbill impermissibly testified on direct examination that she found M.B. credible. PCRA Petition, 5/30/2022, ¶ 10. He averred that he was entitled to a new trial because Ms. Brightbill's testimony improperly invaded the province of the jury to determine M.B.'s credibility; trial counsel's inaction lacked a reasonable basis; and he was prejudiced because the Commonwealth did not present corroborating evidence of M.B.'s testimony and the "only issue for the jury to decide in this

---

[5] On direct appeal, Hendricks claimed, inter alia, that he was entitled to a new trial based on Ms. Brightbill's impermissible testimony that she found M.B. credible. Pa.R.A.P. 1925(b) Statement, 10/21/2022, ¶¶ 3-7. The trial court filed a Rule 1925(a) opinion in which it stated that such a claim should be raised in a PCRA petition, and not on direct appeal, because trial counsel failed to object to Ms. Brightbill's testimony, move to strike it, request a curative instruction, or request a mistrial. Trial Court Opinion, 11/29/2022, at 3-5 (unpaginated).

case was who they believed." *Id.*, ¶¶ 10, 13, 15-16, 18 (citing 42 Pa.C.S. § 5920;[6] *Commonwealth v. Maconeghy*, 171 A.3d 707 (Pa. 2017)).

The PCRA court held an evidentiary hearing on June 2, 2023, at which the court heard testimony from trial counsel. Following the hearing, the PCRA court denied relief. This timely appeal followed.

_____

[6] In relevant part, section 5920 provides:

**(b) Qualifications and use of experts.—**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920(b).

On appeal, Hendricks presents one issue for our consideration: "Whether [Hendricks] is entitled to a new trial because trial counsel was ineffective in failing to properly object to the testimony of [Ms.] Brightbill, a child advocate who conducted an interview of [M.B.]?" Hendricks' Brief at 3.

Our review of an order denying a PCRA petition "is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Commonwealth v. Smith**, 194 A.3d 126, 132 (Pa. Super. 2018) (citation omitted). We review the record in the light most favorable to the prevailing party below and are bound by the PCRA court's findings of fact and credibility determinations; we cannot disturb either unless they are unsupported by the record. **Commonwealth v. Flor**, 259 A.3d 891, 902 (Pa. 2021); **see also Smith**, 194 A.2d at 132. We are not bound by the PCRA court's legal conclusions, which we review de novo. **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023).

Hendricks' claim on appeal sounds in ineffective assistance of counsel. In conducting our review, we are mindful that of the well-settled law:

> [C]ounsel is presumed to have been effective and … the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, [there is] a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must

address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

**Commonwealth v. Reid**, 259 A.3d 395, 405 (Pa. 2021) (citations and quotation marks omitted).

In his brief, Hendricks contends that he is entitled to a new trial because trial counsel provided ineffective assistance when he failed to object, move to strike from the record, request a cautionary instruction to the jury, or move for a mistrial when Ms. Brightbill testified that she found M.B. credible. Hendricks' Brief at 5-6. Hendricks argues that his claim has arguable merit because Ms. Brightbill's testimony was clearly prohibited by statute and invaded the province of the jury to determine a witness' credibility. **Id.** at 8, 10, 12 (citing 42 Pa.C.S. § 5920(b)(3); **Maconeghy**, 171 A.3d 707). According to Hendricks, trial counsel's proffered reasons for not acting—that he thought the case was going well and did not believe jurors follow cautionary instructions—were unreasonable. **Id.** at 12. He contends he was prejudiced because the "only issue for the jury to decide in this case was who they believed." **Id.** at 10-11. He argues that if trial counsel had "taken the appropriate steps to either prevent the testimony or to secure a mistrial, or at least gotten a cautionary instruction, the outcome of the proceeding would probably have been different" and Hendricks "would probably have been acquitted." **Id.** at 10-12.

The PCRA court found that trial counsel was not ineffective for failing to object to the Commonwealth's questioning of Ms. Brightbill:

- 8 -

In reviewing the claim of ineffective assistance of trial counsel[, the PCRA c]ourt finds only that the first prong of the test[, arguable merit,] is met. It is clear that the claim that Ms. Brightbill's testimony as to the credibility of the victim is inadmissible. However, based on [trial counsel's] testimony at the [PCRA] hearing, the [PCRA c]ourt does not find that he had no reasonable strategic basis for his inaction. Further, [the PCRA court] cannot conclude that but for the errors and/or omissions of [trial] counsel that there is a reasonable probability that the outcome of the trial would have been different.

PCRA Court Opinion, 1/8/2024, at 2-3 (unpaginated).

Our review of the record and relevant precedent requires us to disagree with the PCRA court's conclusion. As the PCRA court correctly recognized, "expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations." *Commonwealth v. Jones*, 240 A.3d 881, 896 (Pa. 2020) (collecting cases); *see also Maconeghy*, 171 A.3d at 712 (holding "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse" because "such testimony intrudes into the province of the jury relative to determining credibility"). Further, section 5920 of the Judicial Code permits qualified experts to testify in certain criminal proceedings[7] about the dynamics of, victim responses to, and impact on victims of sexual or domestic violence, 42 Pa.C.S. § 5920(b)(1), but such

---

[7] Section 5920 applied to the criminal proceedings for Hendricks' offenses. *See* 42 Pa.C.S. § 5920(a)(2).

expert testimony is limited to "facts and opinions regarding specific types of victim responses and victim behaviors." *Id.* § 5920(b)(2). The expert witness is expressly prohibited from opining on "the credibility of any other witness, including the victim." *Id.* § 5920(b)(3).

The record reflects that at trial, the court qualified Ms. Brightbill as an expert in forensic interviewing. N.T., 4/5/2022, at 45. The Commonwealth then played for the jury a four-minute portion of the video recording of M.B.'s interview with Ms. Brightbill. *Id.* at 46. Immediately thereafter, the following exchange occurred on direct examination:

> [THE COMMONWEALTH]: Ms. Brightbill, I wanted to ask you, what, if anything, struck you about your interview with [M.B.] in this case?
>
> [MS. BRIGHTBILL]: I felt her to be credible and she provided, you know, details. And I just found, you know, her believable.
>
> [THE COMMONWEALTH]: Okay. Now, [M.B.] testified today that she told her sister several days later. In your experience, do you --
>
> [TRIAL COUNSEL]: Objection.
>
> [THE TRIAL COURT]: Sustained.
>
> [THE COMMONWEALTH]: Your Honor, defense counsel opened the door by asking [M.B.] about her delay in reporting on cross-examination.
>
> [TRIAL COURT]: I'm going to sustain the objection.
>
> [THE COMMONWEALTH]: So you found the victim to be credible?
>
> [MS. BRIGHTBILL]: Yes.

- 10 -

*Id.* at 46-47. This testimony is unquestionably prohibited.[8] *See id.*; *see also* 42 Pa.C.S. § 5920(b)(3); *Jones*, 240 A.3d at 896; *Maconeghy*, 171 A.3d at 712. Accordingly, Hendricks' claim has merit. *See id.*; *Reid*, 259 A.3d at 405.

We now turn to whether trial counsel had a reasonable basis for failing to object to Ms. Brightbill's testimony, move to strike it, request a curative instruction, or request a mistrial. To satisfy this prong of the ineffectiveness test, a petitioner must establish that "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Commonwealth v. King*, 259 A.3d 511, 520 (Pa. Super. 2021) (citation omitted). "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Id.*

We find the case at bar is analogous to *Commonwealth v. Davis*, 541 A.2d 315, 319 (Pa. 1998). Davis was convicted of numerous sex offenses committed against an eleven-year-old boy. *Id.* at 316. He claimed his trial counsel was ineffective for failing to object to expert testimony regarding the credibility of sexually abused children. *Id.* The trial evidence consisted primarily of the victim's testimony, Davis' denial, and the expert's testimony

---

[8] Like the PCRA court, the Commonwealth concedes that the claim raised by Hendricks has arguable merit. Commonwealth's Brief at 3.

that "'children who have not been involved in sexual experiences typically do not fantasize about sexual experiences'" and that his "'experience with children who have had some type of sexual experiences when they report about it, typically it is based upon some event that actually occurred and not some fantasized or fabricated experience.'" *Id.* After finding Davis' ineffectiveness claim had arguable merit, our Supreme Court concluded that "[i]n view of the damaging nature of [the expert's] testimony, we see no reasonable basis for trial counsel's failure to object to the testimony or, at the very least, request a "low grade" charge to soften its impact." *Id.* at 319.

Instantly, at the PCRA hearing, when asked why he did not object to the Ms. Brightbill's testimony about M.B.'s credibility, trial counsel testified that he viewed his objection to the Commonwealth's question about M.B.'s delay in reporting "as kind of a continuing objection." N.T., 6/2/2023, at 10. When asked why he did not request a mistrial, trial counsel responded, without elaboration, that he "felt we had a good jury and things were going pretty well" and that he "was surprised by the verdict." *Id.* at 11. Trial counsel did not know whether it would have been in Hendricks' best interest to have Ms. Brightbill's answers stricken and the jury instructed to disregard the testimony "because sometimes that focuses the jury's attention on something that is better to skip over and move on." *Id.* at 12. Trial counsel added that he was "not persuaded" that jurors follow the trial court's instructions. *Id.* Trial counsel acknowledged, however, that "the issue in the case was totally

credibility." *Id.* Further, when asked why he did not move to strike and request a cautionary instruction to the jury, trial counsel agreed he should have, testifying that "[i]n the light of hindsight, I should have done that." *Id.* at 11.

Trial counsel's proffered reasons for his failure to object to Ms. Brightbill's testimony—that he believed that he had a "continuing" objection, trial was going well, it would place undue emphasis on the testimony, and jurors disregard instructions—do not support a finding that he deliberately chose not to object to Ms. Brightbill's clearly inadmissible testimony. Trial counsel's claimed belief that he had made a continuing objection can be dismissed out of hand, as the record confirms he made no such request. *See* N.T., 4/5/2022, at 47. Further, trial counsel's statement that jurors do not follow the court's instructions is in direct contravention to well-established precedent. *See Commonwealth v. Goods*, 265 A.3d 662, 672 (Pa. Super. 2021) ("It is well-settled that jurors are presumed to follow the trial court's cautionary instructions."). Indeed, trial counsel conceded he should have requested a cautionary instruction. *See* N.T., 6/2/2023 at 11. Lastly, and of the utmost importance for purposes of discerning whether counsel's inaction was based upon a trial strategy reasonably designed to effectuate his client's interest, trial counsel agreed that the case was "absolutely a he said/she said case" and thus, the admission of the damaging expert testimony was in direct conflict with his strategy of convincing the jury that M.B. was lying. *See id.*

at 12. Therefore, as in **Davis**, we discern no objective basis for trial counsel's failure to object to the testimony, move to strike it, request a cautionary instruction, or move for a mistrial. **See Davis**, 541 A.2d at 319; **see also Reid**, 259 A.3d at 405; **King**, 259 A.3d at 520.

Finally, we must determine whether there is a reasonable probability that, but for trial counsel's inaction, the result of Hendricks' proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **King**, 259 A.3d at 521.

We again turn to our Supreme Court's decision in **Davis** for guidance. There, our Supreme Court held that Davis was prejudiced by trial counsel's failure to object to the expert testimony regarding the credibility of sexually abused children. **Davis**, 541 A.2d at 319. The **Davis** Court was "persuaded that the outcome of the trial might well have been different had the expert testimony been omitted as it should have been" where "the evidence at trial consisted primarily of the alleged victim's testimony, the appellant's denial, and [the expert's] opinion regarding the credibility of child sexual abuse victims." **Id.**

Here, at the PCRA hearing, trial counsel agreed that the case rested entirely on credibility. **See** N.T., 6/2/2023, at 12. Even so, trial counsel testified that he had "no idea" whether Hendricks was prejudiced by his failure to act when Ms. Brightbill opined that she found M.B. credible because trial counsel did not know "what the jury based its decision on." **Id.** at 11.

For its part, the Commonwealth argues that Hendricks fails to meet the prejudice prong because other evidence at trial was "overwhelming" to establish his guilt. Commonwealth's Brief at 4. As discussed hereinabove, however, central to the jurors' determination in this matter was whether they believed M.B. or Hendricks. The evidence at trial consisted primarily of M.B.'s testimony, Hendricks' denial, Ms. Brightbill's opinion regarding M.B.'s credibility, and the Facebook Messenger messages. M.B.'s statements (whether made to Officer Johnson at the police station, to Ms. Brightbill during her forensic interview, or during her testimony at trial) were the sole evidence presented that the crimes at issue occurred; there was no physical or circumstantial evidence supporting a sexual encounter between M.B. and Hendricks. Although the Facebook Messenger messages corroborated M.B.'s testimony that she and Hendricks messaged each other that night, they did not contain any sexual references or anything about a sexual encounter between them. It was M.B.'s version of events versus Hendricks' claims of what happened that night, and Ms. Brightbill's testimony that she found M.B. "credible" and "believable," *see* N.T., 4/5/2022, at 47, unequivocally bolstered M.B.'s testimony and invaded the province of the jury to determine an ultimate issue. *See Jones*, 240 A.3d at 896; *see also Maconeghy*, 171 A.3d at 712. By permitting Ms. Brightbill to directly vouch for M.B., the jury was improperly allowed to hear from an expert that M.B. was telling the truth about whether the sexual assault occurred.

Thus, like the *Davis* Court, we conclude that Hendricks suffered prejudice because of trial counsel's deficient performance. Had Ms. Brightbill's expert opinion as to M.B.'s credibility been properly excluded, there is a reasonable probability that the outcome of the proceeding would have been different. *See Davis*, 541 A.2d at 319; *Reid*, 259 A.3d at 405; *see also King*, 259 A.3d at 521.

We therefore conclude that the PCRA court erred and abused its discretion by denying Hendricks PCRA relief. Accordingly, we reverse the order the PCRA court, vacate Hendricks' judgment of sentence, and remand for a new trial. *See Davis*, 541 A.2d at 319 (remanding for a new trial where trial counsel rendered ineffective assistance of counsel by failing to object to expert testimony regarding the credibility of sexually abused children); *see also Maconeghy*, 171 A.3d at 712 (affirming this Court's decision to vacate judgment and remand for a new trial where an expert witness improperly testified, in the absence of physical evidence of abuse, that he believed the victim had been abused as a child).

Order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.


_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>1/29/2025</u>